Dow Chemical Company, Petitioner
v.
F. Fox Benton et al, Respondents

No. A-8791. Delivered May 30, 1962
357 S.W. 2d 565

---

478

*Fulbright, Crooker, Freeman, Bates & Jaworski* and *Sam W. Cruse,* Houston, for petitioner.

*F. F. Benton,* Houston, for respondents.

GREENHILL, JUSTICE.

The question here is whether an attorney may prosecute a cause of action on his own behalf to secure a contingent fee

after his client, the original plaintiff, has been properly dismissed from the case. The trial court held that he could not. The Court of Civil Appeals disagreed and held that he could. 351 S.W. 2d 899.

Roy W. Champion filed suit for damages for personal injuries against Dow Chemical Company. He was represented by the Respondent law firm composed of Mr. Fox Benton and others. More than two years later, Dow took the necessary steps to secure Champion's oral deposition. A subpoena was properly served on Champion, but he failed to appear and has never attempted to show cause for this failure. Champion was urged by his counsel to appear for his deposition, but he refused. Invoking Rule 215a of the Rules of Civil Procedure, Dow moved to dismiss the lawsuit because of plaintiff's refusal to appear for his deposition. Thereupon, Benton filed a petition in intervention, based on the contingent interest of the law firm in the plaintiff's cause of action. Dow moved to strike the intervention.

At the ensuing hearing, no justification was given for Champion's continued refusal to appear. The only witness testifying was the attorney, Benton, who stated:

"I don't think at this time I would strongly oppose the Plaintiff's case being dismissed, but I do want to strongly urge my right to intervene * * *."

The trial court granted Dow's motion and ordered the entire cause dismissed. The Court of Civil Appeals reversed and remanded, holding that Champion's cause could be dismissed but that his attorneys could continue to prosecute the same claim to secure their contingent fee. That is, that although Champion's actions clearly warranted the sanctions imposed by Rule 215a, the dismissal of his suit, there was no showing that his attorneys personally violated any rules which would authorize dismissal of *their* case.

The contingent fee contract involved here is the usual one. Champion agreed to "sell, transfer, assign and convey to my said attorneys the respective undivided interests in and to my said claim as set out above against the aforesaid parties and to any judgment or judgments that I may obtain or that may be rendered to me or my heirs and assigns". If the case were settled prior to the filing of suit, the attorneys were to receive one-third of whatever was recovered for Champion. If suit was filed, the attorneys were to get 40% of the recovery. If the

case were appealed, the percentage for the attorneys increased to 45%. The attorneys seek 40% of the amount which might be awarded to Roy Champion. The attorneys' position is that this contract created in them an immediate, vested, unrestricted, separate and distinct interest in the plaintiff's cause of action. They argue that the rules applicable here are those governing the rights of any ordinary assignee of a cause of action.

The situation then is this: a plaintiff contends that he is injured and desires to sue. He employs counsel. He agrees to pay the attorneys a percentage of whatever they recover for him, and to assign him a like percentage of the cause of action. Conversely, the attorneys agree to take for their compensation a percentage of whatever they recover for the plaintiff. The plaintiff assigns to the attorneys the agreed percentage of whatever is recovered plus a corresponding percentage of the cause of action of the plaintiff. Then the plaintiff goes out of the case entirely. The suit as to him is properly dismissed. The question is, then, may the attorneys press the plaintiff's suit (in which they have a contractual interest) in order that the attorneys may recover their percentage of whatever the plaintiff would have recovered. We think not.

It should be stated that there is no question of the personal ethics of the attorneys here in question. They have proceeded with candor and in good faith toward the courts and their client. The problem is a broad one and of some importance to the entire legal profession in Texas.

In the first place, the fact that the attorney-client relationship is involved here means that we cannot regard this case as one involving an ordinary assignment, devoid of any potential public policy considerations. Attorneys are officers of the Court. They are members of an ancient profession whose members have the unique privilege, and corresponding responsibility, of being essentially the sole judges of the propriety of fellow members' conduct. As a result, the Courts must always carefully examine every situation involving members of their profession.

The pertinent provision of Rule 215a, Texas Rules of Civil Procedure, authorizing dismissal of a cause upon failure to give a deposition, was added by amendment to the Rules in 1957. It was promulgated to remedy deficiencies in the existing Rules. See I Franki, *Vernon's Ann. Texas Rules*, 1961 Supp., 209-213; Thode, "Some Reflections on the 1957 Amendments to the Texas Rules of Civil Procedure", 37 *Texas L. Rev.* 33. Respondents'

position, if upheld here, would go a long way toward nullifying the effectiveness of Rule 215a.

The basic fallacy of respondent's position, in our opinion, is that it ignores the fact that the lawyer's rights, based on the contingent fee contract, are wholly derivative from those of his client. The attorney-client relationship is one of principal and agent. *Texas Employers Ins. Assn. v. Wermske*, 162 Texas 540, 349 S.W. 2d 90 (1961). Therefore, the rights of each in a cause of action during the existence of that relationship are necessarily dependent upon and inseparably interwoven with the other. Neither lawyer nor client should be permitted to select the good features of his contract and reject the bad. There is but one cause of action. Our decisions uphold an agreement to assign a part of the recovery on the cause of action to the attorney. But we have never held that the cause of action is divisible and may be tried for only a percentage of the cause of action.

To illustrate, let us take a closer look at Rule 215a. In addition to giving the trial court the power to dismiss a cause of action for failure of a party to give a deposition, this rule provides alternative sanctions including any orders "as may be just". One of the sanctions specifically permitted is the striking of any part of the pleadings of the defaulting party. Suppose that the trial court had invoked the latter sanction in this case, rather than dismissing the cause entirely. Could it be said that these pleadings would be stricken only as to the plaintiff, but that they could still be used in the same lawsuit to support the introduction of evidence and submission of issues on behalf of the plaintiff's lawyer? Conversely, most of the actual details of any lawsuit are necessarily handled by the lawyer on behalf of his client. Suppose that in a particular lawsuit the lawyer fails to make proper objections, drafts defective special issues, or is late in filing a particular document. Could we allow the client to argue on appeal that all these defects related only to the attorney's case and not to his? Rule 215a is based on Rule 37d of the Federal Rules of Civil Procedure. The case of *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S. Ct. 370, 53 L. Ed. 530, indicates that the legal justification for rules such as these is that failure to produce requested documents or to appear for a deposition creates a presumption of want of merit in the defaulting party's claim. Suppose that in this case Champion had appeared for his deposition but then proceeded to testify that there was no merit in his cause of action. Could we hold that this testimony would not also conclude his lawyer's case?

In our opinion, all of these suggested situations are analogous to the present case, and all of the questions posed above must be answered in the negative. The reason is that as long as the attorney-client relationship endures, with its corresponding legal effect of principal and agent, the acts of one must necessarily bind the other as a general rule.

For legal authority in this case, respondents rely primarily upon those decisions holding that when a client purports to settle a case with the opposite party, the settlement will not bind his attorney who had no notice of the negotiations. One of the attorney's remedies in such a situation is to continue the litigation on his own account to realize his contingent fee. See, e.g., *Texas & P. Ry. Co. v. Vaughan*, Texas Civ. App., 40 S.W. 1065 (Err. ref. 1897) ; *Powell v. Galveston, H. & S. A. Ry. Co.*, Texas Civ. App., 78 S.W. 975 (no writ 1904) ; *Gibson v. Texas Pac. Coal Co.*, Texas Comm. App., 266 S.W. 137 (1924) ; *Davidson v. Gray*, Texas Civ. App., 97 S.W. 2d 488 (no writ 1936). We have no quarrel with the result in these cases. They involve essentially a situation where a client has conspired with a third party to circumvent the attorney-client relationship with the intention of terminating it unilaterally. In each case, the client has attempted to satisfy financially his legal claim without compensating the attorney for his efforts in the case, despite the fact that the attorney's previous efforts probably had much influence on the opposite party's desire to settle. We believe that it is the severing of the attorney-client relationship through the inducements of the opposite party which distinguishes the settlement cases from the case presently before us.

We do not reject the rationale that a properly worded contingent fee contract may effect an assignment of part of the recovery and a part of a cause of action to the attorney. However, the attorney who has received such an assignment invariably elects to litigate his interest simultaneously with his client's interest, in his client's name, and elects implicitly to be bound by any judgment properly rendered in the case. We hold that so long as the existing agency relationship is not terminated, as by the opposite party's buying out the client's interest, the attorney must be bound by that election.

■ Since the case of *Winston v. Masterson*, 87 Texas 200, 27 S.W. 768, it has been the law in Texas that an attorney with a contingent fee contract is not so directly interested in the subject matter of a lawsuit as to make him a "party" within the meaning of the statute disqualifying a judge who is related to a party

in a case tried before him. Art. 15, V.A.C.S. An exception to this rule is in cases where the judge must approve the attorney's fee. *Indemnity Ins. Co. of North America v. McGee,* 163 Tex. 412. This exception was defined in *Postal Mutual Indemnity Co. v. Ellis,* 140 Texas 570, 169 S.W. 2d 482, but the Court there expressly reaffirmed the general rule of the *Winston* case. If we were to adopt respondents' position in the present case, the effect would be that an attorney is no longer merely the legal representative of his client. Instead, in every case where the attorney has a contingent fee contract, he would be more akin to a co-plaintiff, which would seem to necessitate our overturning the long-standing principle of *Winston v. Masterson,* supra. We are not inclined to do so; but this represents just another difficulty encountered if we overindulge in the notion that the attorney with a contingent fee is litigating two distinct, independent interests at the same time.

Our holding in this case, of course, does not necessarily apply to the case where a plaintiff has assigned a portion of his cause of action to an independent third party. Nor do we have the case where an insurance company is litigating its subrogation rights in the name of the insured. Suffice to say that in neither of these situations does there exist the crucial attorney-client, principal-agent relationship between assignor and assignee as that present here.

The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court, dismissing the cause of action and respondents' petition in intervention, is affirmed.

Opinion delivered May 30, 1962.