**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Pennsylvania, Jeff Morgan and Van Huseman, Appellants,**

**v.**

**Guy ALLISON, Dan Alfaro, Holland American Insurance Company, Houston General Lloyds, Robert Patterson, Albert Huerta and Gerald Beckman, Appellees.**

No. 13–85–022–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Sept. 30, 1986.

Allen Wood, Wood & Burney, Corpus Christi, George Pletcher, Helm, Pletcher & Hogan, Houston, for appellants.

Steve A. Bryant, Martin & Sperry, Houston, Russell H. McMains, Edwards, McMains & Constant, Corpus Christi, for appellees.

Before KENNEDY, UTTER and SEERDEN, JJ.

OPINION

KENNEDY, Justice.

The trial court granted a summary judgment for appellees on their suit for declaratory judgment. Originally, we reversed the judgment of the trial court and remanded the case for a new trial; we held that appellee's clients were necessary parties to this suit. *National Union Fire Insurance Co. v. Allison*, 698 S.W.2d 198 (Tex.App.—Corpus Christi 1985), *rev'd*, 703 S.W.2d 637 (Tex.1986). The Supreme Court held that the trial court's failure to join the clients did not constitute fundamental error and remanded the cause to our Court for further consideration. 703 S.W.2d at 638. Appellants' first point of error complains that appellees' clients were necessary parties.

Appellants, in their remaining points of error, complain that the trial court erred in holding that the pay-back provisions of the "Mary Carter" agreements did not apply to appellees. Appellees are Guy Allison, Dan Alfaro, Holland American Insurance Company, Houston General Lloyds, Robert Patterson, Albert Huerta, and Gerald Beckman. The named individuals are attorneys representing clients, pursuant to contingent fee contracts, who sued for damages arising from the 1981 Corpus Christi grain elevator explosions. The clients subsequently entered into "Mary Carter" agreements with appellant, the insurer of CEA. Carter-Day Company.[1] The two companies are insurers of the Port of Corpus Christi Authority, owner of the public grain elevator.

Huerta and Beckman represented the Valdez' interest, and their employment contract provided:

[I] hereby set aside and assign one-half (½) of my cause of action to said attorneys, and agree to pay attorney's fees out of said percentage, one-third (⅓) of the total recovery in the event settlement is made before trial, forty (40%) per cent in the event settlement is made after suit is filed but before trial, and forty-five

1. CEA.Carter-Day Company supplied the dust control equipment.

(45%) per cent in the event the case is tried.

The Valdezes subsequently executed a "Mary Carter" settlement and agreed that fifty percent of all monies actually recovered and paid to the Valdezes by other defendants would be simultaneously paid over directly to appellant National Union, up to the maximum of $886,621.00.

Patterson represented the Tripps' interest, and his employment contract provided: "In consideration of such services, the undersigned hereby assigns and grants unto said attorneys ⅓ of all monies, interest or property recovered." The Tripps subsequently executed a "Mary Carter" settlement and agreed that the payment of one million dollars "shall be treated as a loan secured by any further recovery I may make in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00).... I agree to repay the loan by paying CARTER–DAY fifty percent (50%) of any monies I recover in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00). In no event shall such amount repaid exceed the amount lent by CARTER–DAY under the terms of this Agreement."

Allison represented National Surety Corporation, which assigned and granted twenty-five percent of any recoveries of money, interests or other property as consideration for services. Allison represented the Port of Corpus Christi Authority on a twenty-five percent contingent fee basis. The various insurance companies, via subrogation, executed "Mary Carter" settlements and agreed to simultaneously pay Carter-Day (appellant National Union's insuree) sixty-five percent of any monies actually recovered.

Finally, Allison and Alfaro represented the De Las Santos' interest, and their employment agreement provided: "[I]n consideration of such representation (I or we) hereby assign to (my or our) said attorney thirty-three (33%) percent of any cause of action." The De Las Santos' "Mary Carter" settlement required fifty percent of any monies actually recovered to be simultaneously paid to appellant National Union.

The issue before this Court is whether the "Mary Carter" pay-back provisions apply to the total amount of subsequent recoveries, before the contingent fees are deducted, or whether the pay-back provisions apply to the amount recovered by appellees' clients after the contingent fees are deducted. The trial court deducted the contingent fees, then applied the pay-back provisions to the remainder of the recovery.

■■■ Both parties agree that the two sets of contracts are unambiguous.[2] If there is no ambiguity, then the court must determine the rights and liabilities of the parties by giving legal effect to the contract as written. *Ideal Lease Service, Inc. v. Amoco Production Co.*, 662 S.W.2d 951, 953 (Tex.1983); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). Further, all parts of the contract are to be taken together to effectuate to the fullest extent the intention of the parties as expressed in the instrument. *Ideal Lease*, 662 S.W.2d at 953; *Spooner Addition*, 432 S.W.2d at 519; *Bifano v. Young*, 665 S.W.2d 536, 539 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.).

Appellees contend that the employment contracts assigned them a portion of the cause of action and, therefore, that assignment is exempt from the subsequent "Mary Carter" agreements their clients executed with appellant National Union. We disagree. Although a contingent fee contract may effect an assignment of part of the recovery and a part of the cause of action to the attorney, the attorney that receives such an assignment invariably elects to litigate his interest simultaneously with his client's interest, in his client's name, and elects implicitly to be bound by

---

**2.** The employment contracts comprise one set and the "Mary Carter" agreements comprise one set.

any judgment properly rendered on the case.[3] *Dow Chemical Co. v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 568 (1962). The rationale "is that as long as the attorney-client relationship endures, with its corresponding legal effect of principal and agent, the acts of one must necessarily bind the other as a general rule." *Id.*

■ Appellees' reasoning that the employment contract cause of action assigned to the attorneys is independent from that of their clients is flawed in that it ignores the fact that the lawyer's rights, based on the contingent fee contract, are wholly derivative from those of his client. *Id.* 357 S.W.2d at 567. The rights of both the attorney and the client in the underlying cause of action during the existence of the attorney-client relationship are necessarily dependent upon and inseparably interwoven with each other.

Unless there is specific language in the Mary Carter agreement clearly directing that a different allocation of proceeds should be made, then the provisions of the original contract of employment should govern. The appellees recommended the "Mary Carter" settlements to their clients and realized the effect those agreements would have on the recoveries realized by their clients. The appellees are entitled to their bargained-for contingent fees; a percentage of the recoveries realized by their clients. Their clients' recoveries are determined by the "Mary Carter" agreements, pursuant to the pay-back provisions. Therefore, the appellees' contingent fees are also subject to the "Mary Carter" agreements. Appellees' contention creates a fiction that the "Mary Carter" agreements do not affect their clients' recoveries, the basis for their contingent fees.

The pay-back provisions of the "Mary Carter" agreements apply to subsequent recoveries before the contingent fees are deducted. The appellees' contingent fees are determined by their clients' recovery, after compliance with the "Mary Carter" agreements. We sustain the appellants' remaining points of error.

3. This includes an agreed judgment by settle-

The judgment of the trial court is reversed and the case is remanded for a disposition of the escrow funds in compliance with this opinion.