United States Court of Appeals,

Fifth Circuit.

Nos. 91–1361, 91–1683.

VALLEY RANCH DEVELOPMENT CO., LTD., et al., Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, in Its Capacity as Statutory Successor to FSLIC as Receiver for Sunbelt Savings Association of Texas, Defendant–Appellee,

v.

Richard JACKSON, Movant–Appellant.

VALLEY RANCH DEVELOPMENT CO., LTD., et al., Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund, in Its Capacity as Statutory Successor to FSLIC as Receiver for Sunbelt Savings Association of Texas, et al., Defendants–Appellees.

May 14, 1992.

Appeals from the United States District Court for the Northern District of Texas.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and KENT,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

I.

Valley Ranch Development Co., Ltd. (VRDC), obtained financing for real estate development from a number of banks. The written documents are in the form of loans; VRDC claims that it had oral agreements with the banks that the banks would act as partners rather than lenders. The various lenders eventually went into receivership and fell under the control of the Federal Deposit Insurance Corporation (FDIC). When VRDC did not make its loan payments, its property was foreclosed upon and its debts accelerated. VRDC sued for securities fraud, breach of oral partnership agreements, Racketeer Influenced and Corrupt Organizations Act (RICO) violations, common law fraud, and

[*]District Judge of the Southern District of Texas, sitting by designation.

deceptive trade practices (collectively, "the underlying claims").

In 1988, VRDC and the FDIC sent their dispute to mediation. Although they agreed to the settlement suggested by the mediators, the settlement foundered when they could not agree on the settlement documents. The case inched along in district court. In March 1990, the parties once again tried to negotiate their differences. After negotiations, they agreed to accept the settlement proposed in 1988, subject to final approval by the FDIC. The FDIC Board of Directors refused to approve it.

VRDC then asked the district court to enforce the settlement agreement; the district court refused. VRDC asked for jury trial on the settlement agreement; the district court refused. Since settlement had failed, the case was to proceed to trial.

The court ordered the parties to submit a pretrial order. VRDC omitted all of its underlying lender liability claims from the pretrial order and materials. Instead, it asserted claims related to the failed settlement agreement ("the settlement claims"). The defendants moved to dismiss the underlying claims, and the plaintiffs did not oppose the motion, which the district court granted. The defendants then moved to cancel several notices of *lis pendens* that were encumbering the property. The plaintiffs moved for reconsideration of the dismissal of the underlying claims. The court granted the motion to cancel *lis pendens* and denied VRDC's motion for reconsideration.

The district court entered a partial final judgment on all these rulings and certified the issues for appeal under Fed.R.Civ.P. 54(b). VRDC appeals the partial final judgment in No. 91–1683.

Richard Jackson, VRDC's attorney, moved to intervene pursuant to Fed.R.Civ.P. 24(a)(2); the district court denied the motion. Jackson moved for reconsideration, and again the district court denied the motion. The court then entered a rule 54(b) partial final judgment denying intervention. Jackson appeals the denial of intervention in No. 91–1361, which has been consolidated with No.

91–1683 for purposes of this appeal.

## II.

VRDC contends that the district court erred as a matter of law in refusing to enforce the settlement agreement. We disagree; the court's careful opinion correctly explains why VRDC has not met the requirements for enforcement of a settlement agreement.

The parties essentially agree on the facts. At the beginning of the settlement conference, Gordon Pratt, the FDIC's representative, stated that any settlement was subject to approval by the FDIC. The court correctly found that FDIC approval thus became a condition precedent to a settlement agreement. VRDC claims that Pratt later said he was authorized to make the same settlement offer that the parties had agreed to in 1988. Agency or the scope of authority cannot be proved by statements of the purported agent alone, however. *Claus v. Gyorkey,* 674 F.2d 427, 434 n. 7 (5th Cir.1982); 3 Tex.Jur.3d, *Agency* §§ 173, 240.

We apply Texas law to the enforcement of settlement agreements in Texas diversity cases. *Anderegg v. High Standard, Inc.,* 825 F.2d 77, 80 (5th Cir.1987) (per curiam), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988). Under Texas law, a settlement agreement will not be enforced unless it is written and filed as part of the record. Tex.R.Civ.P. 11 (Vernon Supp.1991)[1]; *see also Anderegg,* 825 F.2d at 80–81. Indeed, "the moment the existence of an oral contract between parties ... is contested, rule 11 precludes further examination of the agreement." *Coke v. Coke,* 802 S.W.2d 270, 277 (Tex.App.—Dallas 1990, writ denied). This settlement never met the Texas standards for an enforceable agreement.

---

[1]There are three narrow exceptions to this rule, including the exception that a nonconforming agreement may be enforced for equitable reasons. *Kennedy v. Hyde,* 682 S.W.2d 525, 529 (Tex.1984). This exception does not help VRDC, however. Application of it has been extremely limited. *See, e.g., Dehnert v. Dehnert,* 705 S.W.2d 849, 851 (Tex.App.—Beaumont 1986, no writ) (settlement enforced where attorney returned settlement documents with a handwritten note saying "everything else looks as agreed"). We are unaware of any case invoking the equity exception to enforce disputed oral agreements.

### III.

VRDC contends that the district court abused its discretion by refusing a jury trial on settlement issues. A jury trial or evidentiary hearing on settlement issues is appropriate when there are disputed issues of material fact. *See, e.g., Massachusetts Cas. Ins. Co. v. Forman,* 469 F.2d 259, 260 (5th Cir.1972). Conversely, since there were no disputed issues of material fact and no legal claim under the accepted facts, a jury trial would have been wholly inappropriate.

In order to establish a settlement claim that could go to the jury, VRDC would have to establish that the FDIC representative had the authority to make a settlement offer to VRDC. *See Walker v. Carpenter (In re Westec Corp.),* 434 F.2d 195, 200 (5th Cir.1970). In order to claim that Pratt had the apparent authority to make a settlement offer, VRDC would have to establish that a reasonable person, using diligence and discretion, would have believed Pratt was so authorized. *Id.* Although VRDC argues that Pratt's authority is a disputed material fact, Pratt could not have had the authority as a matter of law, even accepting all of VRDC's allegations. *See* part II, *supra.*

Moreover, VRDC never amended its complaint to add the settlement claims. The court could not abuse its discretion in denying a jury trial on issues not contained in the complaint. Rule 38, Fed.R.Civ.P., provides that a party shall have a right to a jury trial on issues in the pleadings. VRDC has presented no authority granting a right to a jury trial on an issue *not* included in the pleadings.

### IV.

The district court held that VRDC abandoned its underlying claims by failing to include them in the pretrial order. VRDC argues that the underlying claims were "held in abeyance" until the settlement claims were resolved or "merged with" the settlement claims. Such a status does not exist under the Federal Rules of Civil Procedure.

"Once the [pretrial] order is entered, it controls the scope and course of the trial.

Fed.R.Civ.P. 16. If a claim or issue is omitted from the order, it is waived." *Flannery v. Carroll,* 676 F.2d 126, 129 (5th Cir.1982) (citing cases). The claim is waived even if it appeared in the complaint. *See, e.g., Flannery,* 676 F.2d at 130; *Pacific Indem. Co. v. Broward County,* 465 F.2d 99, 103 (5th Cir.1972). The law is plain. Plaintiffs omitted their underlying claims from the pretrial order, and they are waived.

Plaintiffs argue that the court should have permitted amendment of the pretrial order to include the underlying claims. A pretrial order will be modified only to prevent a miscarriage of justice. Fed.R.Civ.P. 16(e). VRDC has not shown injustice; in fact, the following chronology of events demonstrates that plaintiffs omitted the underlying claims either intentionally or with extreme recklessness:

March 30, 1990       Settlement conference

June 12, 1990   Settlement fails

June 28, 1990   Plaintiffs file motion to enforce settlement agreement

July 12, 1990   Court order requiring filing of Joint Pretrial Order by October 1, 1990. Order states "[t]he Joint Pretrial Order will control all subsequent proceedings in this case." It also states that if Plaintiffs fail to "timely file the pretrial material, the case will be dismissed."

Sept. 18, 1990       Court denies motion to enforce

Sept. 24, 1990       Plaintiffs send letter to defendants and court[2]

---

[2]The text of the letter follows:

> Some of the pre-trial information I received this morning seems to address all of the original claims on the merits made by the Plaintiffs in this suit.
>
> As I indicated some months back, the scope of the pre-trial filing should be limited and determined by the scope of the claims now being made by the Plaintiffs, to wit: the enforcement of the settlement agreement. The other claims previously made have now been merged into that agreement and its enforcement is the only issue remaining before the Court.
>
> Obviously the Court has indicated by his order last week that he intends not to allow the Plaintiffs the enforcement of that agreement, but we feel that there are fact issues raised in connection with that agreement which must be placed before and decided by a jury, and we will be filing a motion with the court to that

Oct. 1, 1990   Parties submit Joint Pretrial Order.  Summary of plaintiffs' claims lists only settlement claims and includes no mention of underlying claims.  None of plaintiffs' materials relate to underlying claims.

Dec. 12, 1990  Court denies plaintiffs' motion for reconsideration of the refusal to enforce the settlement and also denies the plaintiffs' motion for a jury trial on settlement issues.

Feb. 1, 1991   Jefferson Savings files motion to dismiss underlying claims under rule 12(b)(6).

March 11, 1991        Attorney for Jefferson Savings sends letter to plaintiffs reminding them that the motion to dismiss is pending.

March 26, 1991        Court grants motion to dismiss.  VRDC does not oppose the motion.

April 12, 1991        Plaintiffs file motion to reconsider dismissal

-----

Although the district court had twice refused to enforce the settlement agreement and refused to permit settlement issues to go to a jury, VRDC still did not amend its pretrial order[3] or even oppose the motion to dismiss the underlying claims.  Thus, the district court properly dismissed those claims.

V.

VRDC argues that the district court erred in dismissing the notices of *lis pendens.*  As discussed above, VRDC's settlement claims failed as a matter of law, and VRDC waived its underlying claims.  Since VRDC had no remaining claims against the FDIC, the court properly cancelled all notices of lis pendens.

VI.

effect.  In the meantime, however, we will follow the Court's instruction and submit our pre-trial information as required, and on the schedule set by the Court, but it will be limited to the issues still viable in the case.

This being so, I suppose you can do whatever you want to, but it seems senseless for you to be preparing and submitting information to me concerning issues which are no longer to be tried before this Judge in this case.

[3]The April 12, 1991, motion for reconsideration of the dismissal might be construed as requesting an amendment of the pre-trial order, but VRDC did not request amendment while the motion for dismissal was pending.

The district court, on January 22, 1991, properly denied Jackson's motion to intervene. Pursuant to Fed.R.Civ.P. 59(e), Jackson moved for reconsideration on February 5, 1991. The district court denied that motion on February 28, 1991, and certified its decision under Fed.R.Civ.P. 54(b) on March 14, 1991. Jackson appealed on April 1, 1991, "from the Memorandum Opinion and Order entered on February 28, 1991, denying Jackson's Motion for Reconsideration of the Court's January 21, 1991 order denying his application for intervention, which was made final pursuant to Fed.R.Civ.P. 54(b) by the Court's March 14, 1991 Order."

## A.

As a preliminary matter, we note that a denial of intervention is immediately appealable as a collateral order. *See, e.g., Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 377, 107 S.Ct. 1177, 1182, 94 L.Ed.2d 389 (1987); *Wheeler v. American Home Prods. Corp. (Boyle–Midway Div.),* 582 F.2d 891, 896 (5th Cir.1978). A rule 54(b) judgment is not necessary to appeal a denial of intervention as of right, *Huckeby v. Frozen Food Express,* 555 F.2d 542, 546–47 & n. 8 (5th Cir.1977), and indeed rule 54(b) does not apply to otherwise appealable collateral orders. *See Redding & Co. v. Russwine Constr. Corp.,* 417 F.2d 721, 726 n. 33 (D.C.Cir.1969).

The FDIC contends that Jackson has not timely appealed from the original order denying intervention. Jackson filed and served his motion for reconsideration under rule 59(e) exactly ten business days after the denial of his motion to intervene.[4] The court denied the motion for reconsideration, and Jackson appealed less than sixty days after that order. *See* Fed.R.App.P. 4(a). His appeal is timely.

## B.

We turn then to the merits of Jackson's claim. In order to intervene under Fed.R.Civ.P. 24(a)(2), a would-be-intervenor must comply with four requirements:

---

[4]Weekends are not included in the calculation of a ten-day period of time. Fed.R.Civ.P. 6(d).

First, the application for intervention must be timely. Next, the applicant must have an interest relating to the property or transaction which is the subject of the action, and the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest. Finally, it must appear that the applicant's interest is inadequately represented by the existing parties to the suit.

*Howse v. S/V "Canada Goose I",* 641 F.2d 317, 320 (5th Cir.1981) (citing *International Tank Terminals v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir.1978)).

The district court held that Jackson did not meet the second prong of this test, i.e., interest. We read the term "interest" narrowly. That interest should be "direct, substantial, [and] legally protectable." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line,* 732 F.2d 452, 463 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984). We have held, however, that a discharged lawyer with a contingent fee agreement does have an "interest" for purposes of intervention. *Keith v. St. George Packing Co.,* 806 F.2d 525, 526 (5th Cir.1986); *Gaines v. Dixie Carriers, Inc.,* 434 F.2d 52, 54 (5th Cir.1970). A contingency contract thus constitutes an "interest."

Although we differ with the court's reasoning, we affirm its conclusion. Texas law does not permit a current attorney to take on the role of co-plaintiff.

We do not reject the rationale that a properly worded contingent fee contract may effect an assignment of part of the recovery and a part of a cause of action to the attorney. However, the attorney who has received such an assignment invariably elects to litigate his interest simultaneously with his client's interest, in his client's name, and elects implicitly to be bound by any judgment properly rendered in the case. We hold that so long as the existing agency relationship is not terminated, as by the opposite party's buying out the client's interest, the attorney must be bound by that election.

*Dow Chemical Co. v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 568 (1962).

Thus, unless Jackson can show actual collusion between his clients and other parties or an actual attempt to deny him his fee, *see id.,* the refusal of intervention cannot, as a matter of law, impair or impede his ability to protect his interest. Nor can Jackson establish that his interest is not

adequately represented by VRDC. His interest is identical to VRDC's until the agency relationship is broken. Since Jackson has not even attempted to argue that the agency relationship has been severed, we hold that he may not intervene.

## VII.

The FDIC requests that we award sanctions in No. 91–1368. When "the result is obvious [and] the arguments of error are wholly without merit," the circuit court may award attorneys fees for a frivolous appeal under Fed.R.App.P. 38. *Coghlan v. Starkey,* 852 F.2d 806, 811 (5th Cir.1988) (per curiam). A frivolous appeal is one "that relies on legal points that are not arguable on the merits." *Lyons v. Sheetz,* 834 F.2d 493, 496 (5th Cir.1987). VRDC's appeal is meritless but not frivolous; we therefore decline to award attorneys' fees as sanctions.

AFFIRMED.