NUMBER
13-05-383-CV

                                 COURT
OF APPEALS

                     THIRTEENTH
DISTRICT OF TEXAS

                         CORPUS CHRISTI B EDINBURG

 

WILLIAM H. BERRY, JR.,                                                                 Appellant,

                                                             v.

NUECES
COUNTY,                                                                            Appellee.

 

                       On appeal from the County
Court at Law No. 2

                                        of
Nueces County, Texas.

 

 

                                         MEMORANDUM
OPINION

 

    
Before Chief Justice Valdez and Justices Yañez and Castillo

Memorandum Opinion by Chief
Justice Valdez








Appellant,
William H. Berry, Jr., brings this interlocutory appeal from an order of the
trial court granting a plea to the jurisdiction filed by appellee, Nueces
County.  Because we conclude Berry lacked
standing to pursue this claim, we vacate the trial court's order and dismiss
the case for want of jurisdiction.

Background

Berry is an
attorney practicing in Corpus Christi, Texas. 
Mary Thornton, a former Nueces County employee, hired Berry as her
attorney in order to pursue wrongful termination claims against Nueces County.  Berry and Thornton executed a contingency fee
agreement that read in part:

That in consideration of such services rendered by
said attorney, his associates or representatives, there is hereby transferred,
assigned and conveyed to him a one-third (1/3) interest in said claim and cause
of action, if same is compromised and settled prior to suit being filed; in the
event that suit is filed, then the undersigned attorney shall be entitled [sic]
forty percent (40%) of the entire amount of a judgment or settlement . . . .

 

Two years after
litigation was commenced, Thornton terminated Berry=s representation and hired new counsel.[1]  Berry then filed a plea in intervention,
asserting a Apriority lien on any offer, payment, tender, of any
settlement proceeds . . . .@  The trial
court granted his plea in order to allow Berry to intervene Aas an interested person in the matter . . . for his
claim for reasonable, necessary, customary, and contractual attorney fees and
out of pocket expenses pursuant to his fee agreement with Mary Thornton.@  








Thornton, through
her new counsel, then settled her original claim with Nueces County amicably.[2]  Nueces County paid the agreed settlement
amount to Thornton and her current attorney. 
Thornton=s counsel paid its own fees out of the settlement
and tendered the remainder to the court for distribution.  Berry, who was informed about the settlement
by Thornton=s new counsel, filed a petition as intervenor,
arguing that Nueces County is jointly and severally liable with Thornton to
Berry for Berry=s undivided interest in the settlement
proceeds.  

Nueces County
then filed a plea to the jurisdiction in response to Berry=s petition, alleging various defenses that would
defeat the trial court=s jurisdiction, including judicial immunity,
quasi-judicial immunity, legislative immunity, laches, negligence, and
governmental immunity, among others.  The
trial court granted the County=s plea, which Berry now appeals to this Court.  

Standing

We first address
the matter of the trial court=s jurisdiction to entertain this case.  Subject matter jurisdiction is essential for
a court to have authority to decide a case.  Tex. Ass'n Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443‑44 (Tex. 1993). 
Subject matter jurisdiction is never presumed, and it cannot be
waived.  Id. at 443.  An appellate court may address sua sponte the
issue of subject matter jurisdiction.  Id.
at 445‑46.  Because subject matter
jurisdiction is a question of law, our review is de novo.  See Mayhew v. Sunnyvale, 964 S.W.2d 922,
928 (Tex. 1998). 








Standing is a
necessary element of subject matter jurisdiction.  Douglas v. Delp, 987 S.W.2d 879, 882
(Tex. 1999).  To establish standing, a
party asserting a claim must show a justiciable interest by alleging an actual
or imminent threat of injury peculiar to one=s
circumstances.  Tex. Lottery Comm'n v.
Sci. Games Int'l, 99 S.W.3d 376, 380 (Tex. App.BAustin 2003, pet. denied); Elizondo v. Tex.
Natural Res. Conservation Comm'n, 974 S.W.2d 928, 932 (Tex. App.BAustin 1998, no pet.) (citing Warth v. Seldin,
422 U.S. 490, 498‑99 (1975) (noting standard for determining whether
plaintiff has standing is whether she has such personal stake in outcome of
controversy as to warrant invocation of court's jurisdiction)).  Thus, in order for Berry to have standing to
assert his cause of action against Nueces County, he must demonstrate that he
has a personal justiciable interest at stake. 

 In Texas, when an attorney is discharged by his
client before the completion of the representation, the attorney may be able to
treat his discharge as a breach of contract and sue for the amount of his
compensation.  See Mandell &
Wright v. Thomas, 441 S.W.2d 841, 847 (Tex. 1969); Rocha v. Ahmad,
676 S.W.2d 149, 156 (Tex. App.BSan Antonio 1984, writ dism'd).  However, the party against whom the attorney
may assert standing to sue for this breach is his client, not the opposing
party in the underlying litigation.  See,
e.g. Mandell & Wright, 441 S.W.2d at 847 (allowing attorney to sue
client after termination); Walton v. Hoover, Bax & Slovacek, L.L.P.,
149 S.W.3d 834, 836 (Tex. App.BEl Paso 2004 pet. granted) (citing Mandell &
Wright); Law Offices of Windle Turley, P.C. v. Ghiasinejad, 109
S.W.3d 68, 70-71 (Tex. App.BFort Worth 2003, no pet.) (citing Mandell &
Wright).   This is because the
attorney-client relationship is one of contract, and the attorney=s rights are wholly derivative from those of his
client.  See Dow Chem. Co. v. Benton,
357 S.W.2d 565, 567 (Tex. 1962).  Thus,
once dismissed by his client, the attorney may sue that client, but no longer
has a cause of action to assert against the opposing party, as explained by the
Texas Supreme Court:








The question is, [after a plaintiff is no longer in
the case], then may the attorneys press the plaintiff's suit (in which they
have a contractual interest) in order that the attorneys may recover their
percentage of whatever the plaintiff would have recovered.  We think not. 

 

Id. at 566.  

As the supreme court pointed out in Dow Chem. Co., the effect of
granting attorneys such as Berry standing to sue the opposing party would be
that Aan attorney is no longer merely the legal
representative of his client.@  Id. at
568.  Instead, in every case involving a
contingent fee contract, the attorney Awould be more akin to a co‑plaintiff.@  Id.  The supreme court explicitly refused to
recognize attorneys= personal causes of action against the non-client
party in these types of suits, describing the possibility of these suits as Ajust another difficulty encountered if we
overindulge in the notion that the attorney with a contingent fee is litigating
two distinct, independent interests at the same time.@  Id.; see
Winston v. Masterson, 87 Tex. 200, 203-04 (Tex. 1894) (holding that an
attorney with a contingent fee contract is not so directly interested in the
subject matter of a lawsuit as to make him a "party" for purposes of
disqualification).








Berry relies in
part on the decision of the Houston court of appeals in Honeycutt v.
Billingsley, 992 S.W.2d 570, 584 (Tex. App.BHouston
[1st Dist.] 1999, pet. denied), in support of his claim that, in the case of
contingency fees, if the defendant in the underlying suit has notice of the
attorney=s interest, the defendant is liable to the attorney
for that interest, even if he has already paid the client.  However, we find this case distinguishable;
in Honeycutt, the first attorney was not terminated by his client but
instead offered to refer the case to a second, more experienced attorney when
the matter became complex.  See id.
at 574.  The referral agreement explicitly
reaffirmed that the plaintiff had assigned a contingency interest in the first
attorney, and that the first attorney would retain that interest but share it
with the second attorney.  See
id.  Also, all parties involved,
including the defendant, were apparently on notice of the referral and
contingent free agreement.  See id. at
574-75. 

Here, Thornton
unilaterally terminated Berry as her representative.  Her new counsel had no agreement or
relationship with Berry.  Furthermore,
Nueces County, as the defendant in the actual proceeding, did not have
knowledge that Berry might assert a claim against it instead of Thornton.  When Nueces County settled with Thornton and
paid the agreed-upon amount, it only had notice that Berry=s motion for intervention was granted for the
purposes of Berry=s collection of Areasonable,
necessary, customary, and contractual@ attorney=s fees Apursuant to his fee agreement with Mary Thornton.@  There was no
indication in the trial court=s order that Berry could intervene in order to
pursue fees from anyone other than his former client, and Berry=s attempt to impose a lien against any possible
future settlement agreement was not granted in the court=s order. 

This case does
not present an issue of referral agreements between lawyers, and furthermore,
does not present a case in which the parties themselves arrange a secret
settlement in order to defraud their own attorneys.  See Galveston H. & S. Ry. Co. v.
Ginther, 72 S.W. 166, 167 (Tex. 1903). 
Instead, we are simply presented with an attorney who may have a
legitimate claim for reasonable fees against his former client, but who does
not also have standing to assert a claim against a defendant who has fully paid
out all settlement proceeds and is no longer liable to the former client.  








Berry=s rights to a portion of any damages award or
settlement agreement were entirely derivative of Thornton=s rights.  See
Dow Chem. Co., 357 S.W.2d at 567 (noting that attorney=s and client=s rights are Anecessarily dependent upon and inseparably
interwoven with the other.@).  Once the
trial court granted Thornton=s motion to dismiss with prejudice, and Nueces
County fully paid the agreed-upon settlement amount, Berry=s rights in the case in relation to Nueces County
were extinguished.  Thus, while he may
potentially be able to pursue a claim for reasonable attorney=s fees against Thornton as his former client, he
lacks standing to pursue this claim against Nueces County.  See Rapp v. Mandell & Wright, P.C.,
127 S.W.3d 888, 894 (Tex. App.BCorpus Christi 2004, pet. denied).

Conclusion

Because Berry
lacked standing to bring any cause of action against Nueces County, the trial
court lacked subject matter jurisdiction over this case.  Douglas, 987 S.W.2d at 882. Therefore,
we vacate the trial court's order on Nueces County=s plea to the jurisdiction, and we dismiss the case
for want of jurisdiction.  We do not
reach Berry=s issues on appeal. 
See  Tex. R. App. P. 43.2(e); Juarez v.
Tex. Ass'n of Sporting Officials El Paso Chapter, 172 S.W.3d 274, 281 (Tex.
App.BEl Paso 2005, no pet.).

 

 

                                           

ROGELIO VALDEZ

Chief Justice

 

 

Dissenting Memorandum
Opinion 

by Justice Castillo.

 

Memorandum Opinion
delivered and 

filed this 11th day of
May, 2006.











[1] Thornton=s amicus curiae brief argues that
Berry=s termination was for good cause
and describes his representation as Atumultuous and inadequate.@ 
Berry disputes this and argues that there was no good cause for his
termination.





[2] In the settlement agreement, Thornton warranted that she had not Aassigned, authorized or transferred
. . . any claims . . . of any kind or character, which Plaintiff has or may
have had against one or more Defendants, except to the extent of any agreement
between Plaintiff and her current attorney(s).@