

NUMBER 13-17-00672-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GENE S. HAGOOD AND WILLIAM G.
NEUMANN, INDIVIDUALLY
AND D/B/A HAGOOD & NEUMANN,                          Appellants,

v.

MADHAVAN PISHARODI, M.D., P.A.
D/B/A PISHARODI CLINIC,                              Appellee.

On appeal from the 404th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Chief Justice Contreras**

Appellants Gene S. Hagood and William G. Neumann, individually and d/b/a

Hagood & Neumann, appeal the trial court's order setting aside a 2013 judgment in favor

of appellants' clients in a medical malpractice suit. Appellants argue: (1) their clients had

capacity to assert their claims; (2) appellee Madhavan Pisharodi, M.D., P.A., d/b/a Pisharodi Clinic (Pisharodi), waived his challenge to the plaintiffs' capacity to bring the underlying suit; (3) appellants own an equitable interest in the 2013 judgment; and (4) the trial court erred by concluding the 2013 judgment was void and by refusing to compel post-judgment discovery from Pisharodi. We reverse and remand.

## I. BACKGROUND

Appellants represented Mario Saldana, Nancy Lamas, and Jesus Lamas (the plaintiffs) in a lawsuit arising from the 2007 treatment and subsequent death of Micaela Lamas, the plaintiffs' mother. According to their petition, on or about October 29, 2007, Pisharodi performed an epidural steroid injection to treat Micaela's lower back pain. However, complications arose during her recovery. Micaela was diagnosed with severe anoxic brain injury, and she died intestate on November 3, 2007.

The underlying suit, alleging both survival and wrongful death claims, was filed on May 7, 2009. Pisharodi filed a plea in abatement alleging that the plaintiffs lacked capacity to bring a survival claim because they had not been appointed as personal representatives of Micaela's estate. The plaintiffs responded that they have capacity to sue on behalf of the estate because they are Micaela's only natural heirs and because no estate administration was necessary. The trial court denied Pisharodi's plea in abatement and the case proceeded to jury trial. The jury found Pisharodi sixty percent liable, and it found that Micaela would be fairly and reasonably compensated by $175,000 for medical expenses and $12,000 for funeral and burial expenses.[1]  *See* TEX. CIV. PRAC. & REM.

---

[1] The jury found another physician, Alejandro Betancourt, M.D., forty percent liable. The jury was also asked whether the negligence of Xanodyne, a pharmaceutical company, proximately caused Micaela's death; the jury answered in the negative. Neither Betancourt nor Xanodyne were parties to the trial court proceedings, and neither is party to this appeal.

2

CODE ANN. § 71.021 (survival statute). The jury did not award any damages to the plaintiffs in their individual capacities under the wrongful death statute. *See id.* § 71.002 (wrongful death statute). The trial court rendered judgment on the verdict on September 25, 2013; we affirmed; and the Texas Supreme Court denied review. *See Pisharodi v. Saldana*, No. 13-13-00721-CV, 2015 WL 7352301, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2015, pet. denied) (mem. op.).

At some point after our mandate issued, the plaintiffs—independently of appellants—entered into a settlement agreement with Pisharodi.[2] In accordance with the settlement agreement, on February 18, 2016, plaintiff Saldana filed a pro se "Motion For Nonsuit With Prejudice" stating that he and the other plaintiffs "no longer desire to prosecute this suit against [Pisharodi]." Appellants moved to strike the "Motion For Nonsuit With Prejudice," arguing that the plaintiffs had no right to non-suit their claims because final judgment had already been rendered. Appellants noted that they had a contingency fee agreement with the plaintiffs, and they argued that they therefore own an equitable interest in the 2013 judgment. The trial court granted the motion to strike Saldana's non-suit.

On March 8, 2016, appellants filed a petition in intervention asking "that their ownership interest in the Judgment be protected" and that they "recover from Defendants and Plaintiffs their interest in said Judgment." Pisharodi moved to strike the plea in intervention, arguing that, although the 2013 judgment had become final, appellants lack a justiciable interest in the case. The court denied Pisharodi's motion to strike the plea in

---

[2] Under the settlement agreement, the plaintiffs agreed to release Pisharodi from all "claims, demands, obligations, actions, [or] causes of action . . . on account of the claims and judgment that was the subject of this suit" in exchange for Pisharodi's provision of "information and evidence of liability against [Xanodyne] and [Betancourt]." Plaintiff Saldana signed the agreement on his own behalf and as attorney-in-fact for the other two plaintiffs.

intervention.

Appellants then filed a motion to compel post-judgment discovery, seeking to identify Pisharodi's executable assets in an attempt to enforce the 2013 judgment. Pisharodi filed a motion for protective order. A hearing on both motions was set for September 20, 2017. That day, Pisharodi filed a response to the motion to compel stating that he was represented by new counsel and that, "[b]ased on the advice of new counsel," he "bring[s] this response raising a collateral attack on the underlying judgment, which would void the judgment and relieve [Pisharodi] entirely from any further collection efforts." Pisharodi alleged in particular that the 2013 judgment is void because the plaintiffs were not appointed as personal representatives of Micaela's estate.

Following the hearing, the trial court signed an order on November 9, 2017, denying appellants' motion to compel and "granting in part defendants' collateral attack on the judgment." The order stated:

1. After a jury trial in the above styled cause, the jury awarded no damages to the heirs of Micaela Lamas under the wrongful death statute;

2. The jury awarded $187,000 in medical expenses and funeral expenses to the deceased, Micaela Lamas;

3. Although Plaintiffs' Third Amended Original Petition states that no probate estate was necessary, there is no evidence in the final judgment that the Court reached a final determination on that issue;

4. Notwithstanding Intervenor's argument that Defendants waived their right to object that no probate case was filed or that one was necessary, the final judgment on its face is written for the benefit of the Estate of Micaela Lamas as follows:

> "Based on the foregoing, the Court is of the opinion that Judgment should be rendered in favor of Plaintiffs, Mario Saldana, Nancy Lamas and Jesus Lamas, as representatives of the estate of Micaela Lamas, deceased, against [Pisharodi], as set for [sic] below."

4

5. There is no evidence before the Court that a probate case was ever established and/or filed and due to the passage of time (statute of limitations), there is no evidence before the Court that indicates that one can be established and/or filed in the future;

6. Intervenor's contingency fee contract with the heirs of Micaela Lamas was signed in their individual capacity. There is no evidence of a contractual relationship with the Estate of Micaela Lamas.

7. Based on the foregoing, the defects on the face of the judgment cannot be remedied.

It is therefore ORDERED, ADJUDGED, AND DECREED, that Intervenor's . . . MOTION TO COMPEL is DENIED; it is further ORDERED, ADJUDGED, AND DECREED that the final judgment entered on September 25, 2013 is void and uncollectible only as it relates to any amount awarded to the representatives of the estate of Micaela Lamas and/or to the estate of Micaela Lamas.

Appellants perfected this appeal.

## II. DISCUSSION

### A. Motion to Dismiss Appeal

In his brief, Pisharodi argues in part that the appeal should be dismissed on mootness and standing grounds. Pisharodi has also filed a separate motion to dismiss the appeal on the same grounds, and appellants filed a response to the motion.

A case is moot when either no live controversy exists between the parties or the parties have no legally cognizable interest in the outcome. *City of Krum, Tex. v. Rice*, 543 S.W.3d 747, 749 (Tex. 2017) (per curiam). "Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). When a case becomes moot, the parties no longer have standing, and the court must dismiss for lack of jurisdiction. *City of Krum*, 543 S.W.3d at 750.

5

Pisharodi notes in his motion to dismiss that the plaintiffs in the underlying suit have settled their claims with him. A copy of the settlement agreement, signed by the plaintiffs and Pisharodi but not by appellants, was attached to the motion. Pisharodi contends that this settlement agreement renders the instant appeal moot. In response, appellants argue that the appeal is not moot because: (1) they have an "equitable interest" in the September 25, 2013 judgment by virtue of their contingency fee agreement with the plaintiffs[3]; and (2) the post-judgment settlement agreement between the plaintiffs and Pisharodi is unenforceable. They make largely the same arguments in the third issue of their appeal.

We agree with appellants on both points. The Texas Supreme Court's opinion in *Dow Chemical Co. v. Benton*, 357 S.W.2d 565 (Tex. 1962), is instructive. There, the plaintiff in a personal injury suit failed to appear for a deposition, so the defendant moved to dismiss. *Id.* at 566. The plaintiff's attorney then filed a petition in intervention "based

---

[3] The contingency fee agreement provides in relevant part:

III.

Subject to Paragraph VI below, for and in consideration of the services rendered and to be rendered, Client(s) does hereby give, grant, sell and assign to Attorneys the following interest in and to said claims and agrees to pay the Attorneys as follows:

A.      An amount equal to one third (33 1/3%) of the value of any recovery by way of settlement, judgment or otherwise achieved or received by the Client(s) in connection with the matter(s) for which the Attorneys are hereby retained if such recovery is achieved or received prior to the filing of any lawsuit; or

B.      An amount equal to forty percent (40%) of the value of any recovery by way of settlement, judgment or otherwise achieved or received by the Client(s) in connection with the matter(s) for which the Attorneys are hereby retained if such recovery is achieved or received after the filing of any lawsuit.

. . . .

VI.

In the event no recovery is made upon Client's(s') claims, Client(s) will not owe attorneys anything for legal fees or litigation expenses that Attorneys have incurred in the prosecution of the matters for which Attorneys are hereby retained. Otherwise and in the event there is a recovery made upon the Client's(s') claims, Attorneys fees are to be calculated and deducted from the recovery first and the litigation expenses will then be deducted after attorneys' fees.

6

on the contingent interest of the law firm in the plaintiff's cause of action." *Id.* The attorney argued that the contingency fee agreement "created . . . an immediate, vested, unrestricted, separate and distinct interest in the plaintiff's cause of action" which he was entitled to pursue separately. *Id.* The trial court struck the intervention and dismissed the plaintiff's suit. *Id.* The Texas Supreme Court affirmed the trial court's ruling, noting that "as long as the attorney-client relationship endures, with its corresponding legal effect of principal and agent, the acts of one must necessarily bind the other as a general rule." *Id.* at 568 (holding that "so long as the existing agency relationship is not terminated, as by the opposite party's buying out the client's interest, the attorney must be bound by that election"). However, the Court distinguished the case from others in which "a client has conspired with a third party to circumvent the attorney-client relationship with the intention of terminating it unilaterally." *Id.* (citing *Davidson v. Gray*, 97 S.W.2d 488, 492 (Tex. App.—Eastland 1936, no writ); *Gibson v. Tex. Pac. Coal Co.*, 266 S.W. 137 (Tex. Comm'n App. 1924); *Powell v. Galveston, H. & S.A. Ry. Co.*, 78 S.W. 975 (Tex. App.—San Antonio 1904, no writ); *Tex. & P. Ry. Co. v. Vaughan*, 40 S.W. 1065 (Tex. App.—Dallas 1897, writ ref'd)). "In each case, the client has attempted to satisfy financially his legal claim without compensating the attorney for his efforts in the case, despite the fact that the attorney's previous efforts probably had much influence on the opposite party's desire to settle." *Id.* In those cases, "[o]ne of the attorney's remedies . . . is to continue the litigation on his own account to realize his contingent fee." *Id.*

Here, by independently entering into a post-judgment settlement agreement with Pisharodi, the plaintiffs demonstrated their intent to circumvent the contingency fee agreement and unilaterally terminate the attorney-client relationship. Therefore, under *Dow Chemical* and the cases cited therein, appellants were entitled to intervene in the

7

litigation "on [their] own account to realize [their] contingent fee." *See id.*

Moreover, the settlement agreement is not enforceable with respect to appellants. *See Honeycutt v. Billingsley*, 992 S.W.2d 570, 584 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("If a client, after having assigned an interest in the case to his attorney, attempts to compromise the entire case without the attorney's agreement, the attorney is not bound by the settlement.") (citing *Galveston H. & S. Ry. Co. v. Ginther*, 72 S.W. 166, 167 (Tex. 1903); *Seiter v. Marschall*, 147 S.W. 226, 228 (Tex. 1912); *Groves-Barnes Lumber Co. v. Freeman*, 33 S.W.2d 218, 219 (Tex. App.—Texarkana 1930, no writ)). Accordingly, plaintiffs' execution of the settlement agreement does not render this appeal moot with respect to appellants. We deny Pisharodi's motion to dismiss the appeal, and we sustain appellants' third issue.

## B. Plaintiffs' Capacity in the Trial Court

By their first issue, appellants contend that the plaintiffs had capacity to assert their survival claim in the trial court despite the fact that they were not named personal representatives of Micaela's estate. By their second issue, appellants contend that Pisharodi waived his challenge to plaintiffs' capacity. And by part of their fourth issue, appellants contend that the trial court erred in concluding that the 2013 judgment was void. We consider these issues together.

A void order is subject to collateral attack in a new lawsuit, while a voidable order must be corrected by direct attack. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010) (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)). Unless successfully attacked, a voidable judgment becomes final. *Id.* "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular

judgment, or no capacity to act." *Id.* (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)).

In his written response to appellants' motion to compel, Pisharodi alleged only that the 2013 judgment is void because the plaintiffs were not appointed as personal representatives of Micaela's estate and therefore lacked capacity to bring their survival claim. Appellants contend on appeal that the trial court erred in sustaining this collateral attack on the 2013 judgment in part because Pisharodi waived his complaint regarding the plaintiffs' capacity.

We agree. Pisharodi perfected an appeal from the 2013 judgment but did not argue that the trial court erred in denying his plea in abatement regarding the capacity issue. *See Pisharodi*, 2015 WL 7352301, at *1–9. The trial court's plenary power over the 2013 judgment has since expired. Thus, in order to mount a successful attack on the judgment, Pisharodi had to show that the trial court lacked jurisdiction in 2013. *See Travelers Ins. Co.*, 315 S.W.3d at 863. But unlike standing, a party's lack of capacity is an affirmative defense that must be raised by a verified pleading in the trial court and does not deprive a court of subject matter jurisdiction. *See* TEX. R. CIV. P. 93(1)–(2); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003); *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also City of S. Padre Island v. La Concha Condo. Ass'n*, No. 13-18-00037-CV, 2018 WL 5289720, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, no pet.) (mem. op.). Because Pisharodi never alleged any legally cognizable basis for the trial court to conclude that it lacked jurisdiction in 2013, the court erred in declaring the 2013 judgment void.

Even if Pisharodi had not waived his complaint regarding the capacity of the

9

plaintiffs to bring a survival claim, the trial court's ruling in this case would be erroneous. In general, only an estate's personal representative has the capacity to bring a survival claim. *Austin Nursing Ctr.*, 171 S.W.3d at 850 (citing *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971) ("[T]he personal representative . . . is ordinarily the only person entitled to sue for the recovery of property belonging to the estate.")). But the Texas Supreme Court has acknowledged that "under certain circumstances heirs may be entitled to sue on behalf of the decedent's estate." *Id.* (citing *Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex. 1998)). For example, "[h]eirs at law can maintain a survival suit during the four-year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none [is] necessary." *Id.* at 851 (citing *Shepherd*, 962 S.W.2d at 31–32).

Here, the plaintiffs alleged in their 2012 petition that they are Micaela's heirs and that no administration of Micaela's estate "was or is necessary." Pisharodi has never disputed these factual allegations, nor has he ever disputed that the suit was brought within the four-year period for instituting administration proceedings. Accordingly, the plaintiffs had capacity to bring suit on behalf of Micaela under the survival statute. *See id.* We sustain appellants' first, second, and fourth issues.

## C.     Motion to Compel Post-Judgment Discovery

By the remainder of their fourth issue, appellants argue that the trial court erred in declining to grant their motion to compel post-judgment discovery under Texas Rule of Civil Procedure 621a. *See* TEX. R. CIV. P. 621a.[4] We review a trial court's ruling on a

---

[4] Rule 621a provides in part:

At any time after rendition of judgment, and so long as said judgment has not been suspended by a supersedeas bond or by order of a proper court and has not become dormant . . . , the successful party may, for the purpose of obtaining information to aid in the enforcement of such judgment, initiate and maintain in the trial court in the same suit

10

such a motion for abuse of discretion. *See In re Longview Energy Co.*, 464 S.W.3d 353, 362 (Tex. 2015) (orig. proceeding); *Sintim v. Larson*, 489 S.W.3d 551, 558 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

Appellants stated in their motion that they propounded interrogatories and requests to produce on Pisharodi on April 27, 2016, but that he failed to respond. According to appellants' motion, after they filed an initial motion to compel, the trial court held a hearing and then rendered an order on December 5, 2016, directing Pisharodi to fully respond to the discovery requests within thirty days.[5] Appellants contended in a second motion to compel that Pisharodi failed to comply with the December 5, 2016 order. They asked that Pisharodi be held in contempt of court and sanctioned.

Pisharodi's written response to appellants' motion to compel was limited entirely to the argument that the 2013 judgment was void—an argument that we have already rejected. Accordingly, we agree that the trial court abused its discretion in denying post-judgment discovery under Texas Rule of Civil Procedure 621a. That said, appellants do not provide any argument or authority regarding their request for sanctions and a contempt order. *See* TEX. R. APP. P. 38.1(i). Thus, we cannot conclude the trial court abused its discretion in failing to award sanctions or in failing to hold Pisharodi in contempt. Nevertheless, in light of the circumstances and the underdeveloped record, we hold that the trial court is not precluded from awarding this relief in further proceedings

---

in which said judgment was rendered any discovery proceeding authorized by these rules for pre-trial matters. . . .

TEX. R. CIV. P. 621a.

[5] The appellate record does not contain an order compelling Pisharodi to respond to discovery responses, nor does it contain a transcript of any hearing regarding appellants' motion to compel. However, in his written response to appellants' motion to compel in the trial court, Pisharodi stated that he "do[es] not dispute generally the state of post judgment discovery as stated in [appellants' motion]."

11

if supported by the facts and the law.

**D.    Attempted Cross-Issues**

In his appellee's brief, Pisharodi purports to raise two cross-issues:  (1) the trial court abused its discretion in refusing to strike appellants' plea in intervention; and (2) the trial court abused its discretion in setting aside Saldana's motion for non-suit.  However, Pisharodi did not file a notice of appeal.  A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal.  TEX. R. APP. P. 25.1(c). We "may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."  *Id.*  Pisharodi has not suggested or argued that there is just cause to consider the merits of the challenged rulings in the absence of a notice of appeal.  Accordingly, we are without jurisdiction to consider these purported cross-issues.  *See id.*

## III. CONCLUSION

The trial court's judgment is reversed in its entirety, and the cause is remanded for further proceedings consistent with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed the
12th day of December, 2019.