NUMBER 13-01-255-CV





COURT OF APPEALS





THIRTEENTH DISTRICT OF TEXAS





CORPUS CHRISTI






 ROBERT D. RAPP , Appellant, 



v.





MANDELL & WRIGHT, P.C. , Appellee.






On appeal from the 221st District Court

 of Montgomery County, Texas.








O P I N I O N



Before Justices Yañez, Dorsey (1), and Amidei (2)



Opinion by Justice Amidei





 Robert D. Rapp, appellant, appeals from a jury verdict and judgment in a trial of an intervention by Mandell & Wright, P.
C., appellee, and appellant's "conditional" intervention, both asserting the right to receive attorney's fees and expenses in
the underlying wrongful death personal injury case which had been previously settled. Although the Ross and Thornhill
survivors, plaintiffs in the underlying case, were named as parties in appellee's intervention, they were not served with
citation and were dismissed as parties prior to trial.

 Appellant claims that as a matter of law he is entitled to the $401,110.89 deposited in the registry of the court representing
the contingent fees in question, as well as the $275,425.00 deposited for expenses, and the trial court erred in denying his
motion for judgment notwithstanding the verdict of the jury and motion for new trial which contain his grounds therefor. In
five issues, appellant repeats the grounds of such motions which argue the trial court erred: (1) as a matter of law in
denying appellant's motion for judgment notwithstanding the verdict of the jury (JNOV); (2) in allowing evidence of
appellant's former employment status and shareholder agreement which led to the rendition of an improper verdict; (3) in
denying appellant's motion for new trial because the answers to all material jury questions were either supported by
insufficient evidence or so against the great weight and preponderance of the evidence as to be manifestly unjust; (4)
alternatively, in not equitably splitting the Thornhill fee between appellant and appellee; and (5) alternatively, in not
awarding appellant his attorney's fees as found by the jury.

Factual and Procedural Background



 In 1987, while appellant was a shareholder and an employee of appellee, a professional corporation, he was contacted by
two attorneys in the Midwest to handle wrongful death cases for the families of two truck drivers who lost their lives in a
truck stop fire at Conroe, Texas. Appellant agreed to represent the plaintiffs and signed the contingent fee contracts which
provided a contingent fee of 33 1/3 percent of the recovery. The contracts designated appellant "of counsel," but there was
no other name or signature of any other attorney or agent thereon. Appellant was the lead attorney and legal strategist
performing the great majority of the work in the case. Zoe Littlepage, a less-experienced lawyer, hired by appellee
sometime in 1990, worked on some of the simpler matters. Littlepage and another appellee attorney assisted appellant until
they left the corporation shortly after the trial court entered the final judgment. Being the legal strategist in this case was
especially important because the arsonist who set the fire at the truck stop, as well as the truck stop owners, were
"judgment-proof." Even after appellant devised a unique theory of recovery (appellant asserts that the theory is
unprecedented in the United States) against the owners' lender, the lender filed a bankruptcy in Pennsylvania and it required
several years of maneuvering by appellant in order to secure guaranteed insurance coverage out of the bankruptcy. After
the insurance coverage was obtained, the case was tried. The trial lasted one month and resulted in a jury verdict for the
plaintiffs in excess of $4 million, and specifically implicated the owners' lender pursuant to appellant's unique theory that
the lender was responsible for the operation of the truck stop with the owners and had a non-delegable duty to initiate and
maintain safety features that probably would have prevented the fire or at least the deaths. However, the trial court granted
the solvent defendants' motion for JNOV and awarded damages only against the insolvent defendants in August 1993.

 Between 1994 and 1996, appellees repeatedly contemplated claiming the plaintiffs' case as a loss for tax purposes and
dropping the case, but appellant strongly opposed these efforts. In 1996, appellant and appellee had disputes over
appellant's employment contract, which he refused to sign. In March 1997, unable to reach an agreement, appellee
terminated appellant. By agreement, the client files were divided between appellant and appellee, with appellant accepting
seven files, including the plaintiffs' case, all being evaluated by appellee as having little prospect of recovery. The
remaining cases were retained by appellee. As to the divided cases, no express agreement was made as to fee or
expense-sharing between appellee and appellant.

 Appellant appealed the trial court judgment, and in May of 1997, the Ninth Court of Appeals in Beaumont reversed the
trial court's judgment and reinstated the jury's verdict.

 At this time, after learning appellant was no longer with appellee, the plaintiffs, through the Midwest attorneys who
referred the cases to appellant, sent letters to appellee directing that the file be turned over to appellant to ensure access for
necessary work left to be done. The letters expressed the plaintiffs' desire that appellant continue to be in charge of the case
as he had been for ten years, but did not discharge or request appellee to withdraw from the case. No additional written
contingent fee contracts were made, but after appellant was fired by appellee, the plaintiffs reaffirmed their agreement to
pay appellant the originally-agreed-to contingent fee. Appellant continued representing the plaintiffs during the defendants'
attempted appeal of the case to the Texas Supreme Court. While the case was pending in the Ninth Court of Appeals, on
July 25, 1997, without any prompting by the Midwest attorneys, the plaintiffs, or the appellant, appellee voluntarily and
unilaterally filed a motion to withdraw from the plaintiffs' case. The court of appeals considered the motion moot since the
plaintiffs already had designated the appellant as their attorney of record, and appellee was not listed as an attorney for the
plaintiffs.

 Appellant convinced the plaintiffs and the Midwest attorneys to agree to mediation rather than risk potential review in the
Texas Supreme Court. In November 1997, appellant successfully mediated the plaintiffs' case by obtaining a settlement
with the lender's insurance company in the amount of $1.9 million, which was $1.8 million more than the insurer had
previously offered.

 Prior to the January 5, 1998, scheduled funding of the settlement, appellee filed an intervention in the underlying case,
alleging it was entitled to all of the $676,535.89 on deposit, but did not name an adverse party. The trial court ordered the
$676,535.89 to be deposited into the registry of the court, and allowed the plaintiffs to receive the balance of the $1.9
million settlement. Pursuant to the agreement of the plaintiffs, appellee, and appellant, the amended final judgment
included the order as follows: "No party to these proceedings waives any position by agreeing to place these funds in the
Registry of the Court." After appellant answered and moved to strike appellee's intervention on the grounds he was entitled
to the fees as the primary attorney of record at the time the case was settled, appellee amended and claimed appellant had
no standing because he had not intervened. Thereafter, appellant filed his "conditional," petition in intervention asserting
his claim to the fees should such plea be necessary. Both parties' motions for summary judgment were denied. Appellee
filed an amended intervention and although the plaintiffs were named as parties, with breach of contract and unjust
enrichment claims asserted against them, they were never served with the intervention. Appellant answered appellee's
amended intervention alleging waiver, estoppel, accord and satisfaction, abandonment of the plaintiffs, and the invalidity of
the intervention under the fee agreements; he also pointed out that the plaintiffs had not been served with citation on the
intervention. Appellee filed a Second Amended Petition in Intervention, alleging it was entitled to the fees because of the
previous employment agreement and shareholder agreement between appellee and appellant. Appellant answered the
Second Amended Intervention realleging his previous defenses and specifically alleged that any obligation he had under the
shareholder agreement to turn over any fees he earned ended when he was terminated by appellee, and that there was a
defect of parties because appellee had no claim against appellant, and the plaintiffs had not been served. The trial court
proceeded to trial over appellant's objections that he was not making a claim as a former employee but as a second lawyer
who successfully concluded a case, and that the plaintiffs, the only parties against whom appellee's claim could have been
made, had not been served and were not properly before the court. Instead, the trial court dismissed the plaintiffs from the
intervention proceedings with a ruling that the appellee's claim attached to the fund in the registry of the court. The
interventions were tried and the jury answered the questions in favor of appellee, except appellant was awarded $25,000.

Motion to Dismiss

 Appellee filed a motion to dismiss appellant's appeal as moot because appellant accepted the $25,000 he was awarded by
the trial court judgment. Appellant redeposited the $25,000 plus interest after nine months. Appellee did not change its
position, nor was it otherwise injured because of the withdrawal and redeposit.

 The acceptance of benefits of a judgment can only affect an appeal where it is barred by an estoppel. Carle v. Carle, 149
Tex. 469, 234 S.W.2d 1002, 1004 (Tex. 1950). The acceptance of the $25,000, which appellant would have been entitled to
regardless of the outcome of the appeal, did not create an estoppel, and was not unconscionable even if appellant had not
redeposited the $25,000. Bristol-Myers Squibb Co. v. Barner, 964 S.W.2d 299, 302 (Tex. App.-Corpus Christi 1998, no
pet.)

 Appellee's motion to dismiss is overruled.

Standard of Review

 The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is to determine
whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law. Fort Bend
County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 1991). If so, then the trial court erred in denying the motion
for judgment notwithstanding the verdict. Id.

 The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be
so framed as to give the party all the relief to which he may be entitled either in law or in equity. Provided, that upon
motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been
proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that
has no support in the evidence. 



Tex. R. Civ. P. 301. 

 The standard for reversible error in civil cases is provided in rule 44.1 of the Texas Rules of Appellate Procedure as
follows:

 (a) Standard for reversible error. No judgment may be reversed on appeal on the ground that the trial court made an error
of law unless the court of appeals concludes that the error complained of:



 (1) probably caused the rendition of an improper judgment; or



 (2) probably prevented the appellant from properly presenting the case to the court of appeals.



Tex. R. App. P. 44.1(a).

 The court on its own motion may disregard the jury's answer to an immaterial question. Brown v. Armstrong, 713 S.W.2d
725, 728 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

 To preserve appellate complaints, the record must show that 



 (1) the complaint was made to the trial court by a timely request, objection or motion that:



 (A) stated the grounds for the ruling the complaining party sought from the trial court with sufficient specificity to make
the trial court aware of the complaint, unless the specific grounds were apparent from the context; and 



 (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or
Appellate Procedure; and 



 (2) the trial court: 



 (A) ruled on the request, objection or motion, either expressly or implicitly; or 



 (B) refused to rule on the request, objection or motion, and the complaining party objected to the refusal. 



Tex. R. App. P. 33.1(a)(1)(2).



Motion to Strike Intervention

 Appellant filed a motion to strike appellee's intervention, alleging that appellee had no right to intervene because the
contingent fee contract(s) appellee was claiming under only constituted a contingent fee interest, not an assignment.
Appellee argues that the language, " . . . assigns . . . that portion of any final recovery realized or recovered by the client
which represents the attorney's fee computed in accordance with this agreement" was an assignment. Although a properly
worded contingent fee contract may effect an assignment, Dow Chemical Co. v. Benton, 163 Tex. 477, 357 S.W.2d 565,
568 (1962), the language in this case does not assign or transfer an interest in the cause of action or subject matter. Wheeler
v. Fronhoff, 270 S.W. 887, 888 (Tex. Civ. App.-Texarkana 1925, writ dism'd). The language at issue in the Wheeler case,
"[a]ppellants are to have one-third of any sum of money or property, or both or either that may be recovered or paid as a
compromise of said suit for their services therein," was held not to evidence an intent to transfer the title to a cause of
action, and the attorney was not entitled to intervene. The language in this case likewise does not evidence an intent to
assign or transfer an interest in a cause of action. Assuming, arguendo, the contingent fee contract was an assignment of
plaintiffs' cause of action to appellee, appellee assigned its interest to appellant upon appellant's termination and division of
the client cases, and appellee no longer would have had a justiciable interest in the matter. River Consulting, Inc. v.
Sullivan, 848 S.W.2d 165, 169 (Tex. App.-Houston [1st Dist.] 1992, writ. denied).

 Appellee admitted it had no claim or cause of action against appellant. As a matter of law, appellant's contract with
appellee, which is the basis of appellee's claim for the fees, terminated before appellant concluded the plaintiffs' case,
leaving appellee without a justiciable interest, or an actual controversy with appellant. Hanna v. Godwin, 876 S.W.2d 454,
457 (Tex. App.-El Paso 1944, no writ) (Texas courts only have power over litigants with justiciable interests). Appellee's
prayer for declaratory relief does not support an action against appellant because it is merely a procedural device and does
not create any substantive rights or causes of action. Sid Richardson Co. v. Interenergy Res. Ltd, 99 F.3d 746, 752 (5th Cir.
1996). Appellee's intervention petition alleges appellee was discharged without good cause by the plaintiffs, and that
plaintiffs breached their contract, but alleges no cause of action against appellant. Appellee could assert no claim against
plaintiffs as they had been dismissed from the intervention proceedings. The trial court's dismissal of the plaintiffs and
ruling that appellee's invalid claim attached to the fund in the registry of the court was an abuse of discretion because such
action was without reference to any guiding rules and principles. McDaniel v. Yarborough, 898 S.W.2d at 253. The
appellant reserved all rights to the deposit by the provision in the judgment which orders that he did not waive any position
by agreeing to deposit the funds in the registry of the court.

 Prior to the submission of the charge to the jury, appellant objected to the submission of any issue on behalf of appellee on
the grounds that appellee has no standing to intervene because appellee was claiming under a contingent fee contract rather
than an assignment of a cause of action, and because there are no pleadings to support any issue for any recovery on behalf
of appellee. Appellant stated the same reasons in his motion to dismiss and his motion for directed verdict. The trial court
overruled all of appellant's objections. The same substantive objections were made in appellant's motion for JNOV.

 The trial court implicitly overruled appellant's motion to strike by proceeding to trial and granting relief to appellee, Tex.
R. App. P. 33.1(a)(2)(A), and expressly by the "Mother Hubbard" order in the final judgment which denied all relief not
granted. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 193 (Tex. 2001). As the appellee had no standing to intervene, the
trial court erred in overruling appellant's motion to strike the intervention, and holding that appellee's claim attached to the
fund in the registry of the court. Tex. R. Civ. P. 60. Had the appellee's intervention pleadings been properly stricken by the
trial court as appellant requested in his motion to strike, there would have been no pleadings to support or conform to the
trial court judgment. Tex. R. Civ. P. 301. Although appellee argues the procedure is similar to an interpleader action, it is
not an interpleader because the proceedings were instigated by the appellee, not the plaintiffs who held or had control over
the funds. Plaintiffs could have been stakeholders had they joined the appellee and the appellant as defendants and required
them to interplead because their claims are such that the plaintiffs are or may be exposed to double or multiple liability.
Tex. R. Civ. P. 43. Appellee could not make such allegations and proof. Further, neither appellee or appellant nor the
plaintiffs could have been stakeholders because in order to interplead, one must have no interest in the subject matter of the
litigation. Taliferro v. Tex. Commerce Bank,660 S.W.2d 151, 155 (Tex. App.-Fort Worth 1983, no writ). The sole issue
between appellee, appellants and the plaintiffs would have been whether plaintiffs fulfilled their burden of establishing that
they are subjected to multiple liability. Id. The proceeding could not have been an interpleader because the stakeholder
must be a party to the proceedings, but plaintiffs were dismissed by the court prior to the commencement of trial. Maverick
County Water Control & Improv. Dist. v. Laredo, 346 S.W.2d 886, 889 (Tex. Civ. App.-San Antonio 1961, writ ref'd
n.r.e.); 1 McDonald Texas Civil Practice Sec. 5.64 (1992). Also, another requirement to an interpleader is that the funds
be deposited unconditionally into the registry of the court. Tri State Pipe & Equip. v. Southern Mut., 8 S.W.3d 394, 402
(Tex. App.-Texarkana 1999, no pet.). However, the deposit in this case was not unconditional because it was made without
any waiver of rights by the parties and there was no disinterested party to qualify as a stakeholder. Taliferro, 660 S.W.2d at
153; 47 Tex. Jur.3d Interpleader § 1.

 Except for the issue of attorney's fees to be awarded pursuant to the Declaratory Judgment Act, (3) there was no necessity
for a jury trial had the trial court granted appellant's motion to strike appellee's intervention. Appellant was entitled to the
relief he sought as a matter of law, there being no alleged claims or causes of action against him which obligated him to
defend against or which would raise a fact issue for the jury. The status of the plaintiffs' case remains the same as before
appellee tried to intervene. The plaintiffs and appellant who concluded their case were and are entitled to finally settle
between them the settlement funds without any interference from the appellee.

Issues Presented

 Appellant's issues numbers one and three claim the trial court erred as a matter of law by denying his motion for JNOV
and motion for new trial because he was at all times during the prosecution of the plaintiffs' case the lead attorney in charge
who successfully concluded the case all pursuant to the intent and direction of the plaintiffs. According to appellant, he
was entitled to the fee and expense deposit, notwithstanding appellee's claim that appellant's rights were governed by his
previous employment contract and shareholder agreement, because appellee withdrew, abandoned, and/or was terminated
from any connection with the case prior to its conclusion. Appellant's issue number two complains that the trial court erred
in allowing, over appellant's objection, evidence of appellant's former employment status and the shareholder agreement
which led to the rendition of an improper verdict.

 Was a division of fees prohibited after appellee terminated appellant?

 Appellant argues that rule 1.04 of The Texas Disciplinary Rules of Professional Conduct prohibits a division of fees
between appellee and appellant because appellant, who concluded the case pursuant to a contract with the clients, was not
in the same firm,i.e., appellee's firm, and the proposed division of fees was not in proportion to the professional services
performed by each lawyer nor was the division made with a forwarding lawyer, or made by written agreement with the
client with a lawyer who assumed joint responsibility for the representation; and the client was not advised of the nature
and extent of appellee's participation and was not given the opportunity to object to appellee's participation. We agree.
Appellant was terminated by appellee, but continued to represent the plaintiffs in the case pursuant to plaintiffs' request.
Appellees relinquished any claim it had to attorney's fees in the plaintiffs' case when it terminated appellant from its
employment and agreed with appellant at that time that he take plaintiffs' case among other cases to handle without any
reservation of its rights as to fees or expenses. Even if appellee believed the May 1997 letters from Hanes and Luce, the
Midwest attorneys, meant it was discharged, such letters not only could not have discharged appellee because appellee had
already abandoned the case and withdrew voluntarily when it fired appellant and agreed to assign plaintiffs' case to
appellant and such letters did not contain any language discharging appellee or requesting appellee's withdrawal. The
letters requested that appellant continue as counsel in the case he had worked on for over ten years and that appellee release
the file to appellant. Further, Hanes and Luce testified they did not terminate or discharge appellee and had no intention to
do so, and shareholders Tucker and Vaughn admitted they did not ask Hanes and Luce if they should consider themselves
terminated. Appellee's response to the Hanes and Luce letters was merely a self-serving statement that it was "ready,
willing and able, and that it agreed to turn over the file to appellant, and gave notice it was retaining "its fee interest." One
of appellee's shareholders told appellant the case was his sole responsibility. Even if appellee's intervention was proper,
there was no evidence that the plaintiffs discharged appellee, or requested appellee's withdrawal, with or without just cause.
Appellee failed its burden of proving just cause to withdraw. Augustson v. Linea Aerea Nacional-Chile S.A., 76 F.3d 658,
663 (5th Cir. 1996). There was no agreement that appellee would share in any joint responsibility or fees with appellant or
any other lawyer after appellant was terminated by appellee. Since the plaintiffs were not bound by the terms and
conditions of the employment contract between appellee and appellant even when appellant was employed by appellee, rule
1.04 prohibits any division of the fees in question with appellee, but does not prevent appellant from recovering the fees he
seeks in this case because he continued the prosecution of the case with the knowledge and consent of the plaintiffs and the
Midwest attorneys, after he was fired by appellee.

 The appellee's position is based on the employment contract and shareholder agreement to which appellant was bound
from the time he signed the contingent fee contracts until he was terminated by appellee in March 1997. However, upon
appellant's termination: (1) he was no longer bound under the employment contract and shareholder agreement; (2)
appellant and appellee had no contractual obligation to each other to continue the plaintiffs' case; (3) appellee by agreement
with appellant assigned to appellant all of its rights and obligations to the plaintiffs' case which included all the fees and
expenses as provided in the written contracts with the plaintiffs; Univ. of Tex. Med. Branch v. Allan, 777 S.W.2d 450, 453
(Tex. App.-Houston [14th Dist.] 1989, no writ) ("As a general rule, in order to be assignable, an estate or interest in
property must have an actual or potential existence. . . . The assignor, after an unqualified assignment and notice to the
obligor, generally loses all control over the chose, and can do nothing to defeat the rights of the assignee." (Emphasis
supplied)); (4) no agreement was made which reserved any rights to appellee in the plaintiffs' case; (5) with knowledge of
appellant's termination plaintiffs affirmatively assented that the appellant continue representing them in their case for the
one-third (1/3) contingent fee; (6) appellant could not have divided the fees earned in the plaintiffs' case, (a) since he was
no longer a member of appellee's law firm, (b) no other attorney who was a member of appellee's law firm performed any
work in the plaintiffs' case after appellant was terminated, and (c) appellee made no agreement with a forwarding lawyer or
the clients to divide the fees in return for appellee's agreement to assume joint responsibility for the representation (4) and
(7) the agreement to the division of client cases and assignment was an accord and satisfaction as the facts proved
irresistibly point to such conclusion, Jenkins v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969); and the accord and
satisfaction constitutes a bar to any action by appellee on its previous contracts with appellant. Harris v. Rowe, 593 S.W.2d
303, 306 (Tex. 1979). The facts and circumstances surrounding the execution of the new agreement are sufficient to
establish the existence of an accord and satisfaction. Id. 

 Appellee's connection with the plaintiffs' case was effectively severed at the time it terminated appellant, and assigned him
the plaintiffs' case and six other cases without a reservation of rights therein. Appellee withdrew from the plaintiffs' case
without being requested to do so by the plaintiffs. Appellee wanted no responsibility for the case, and made plans to claim
the case a loser for tax purposes. Appellee wanted to withdraw after the unfavorable trial court judgment but appellant
objected and maintained the case had merit. Even if withdrawal for just cause was an issue, appellee's separation from the
plaintiffs' case was voluntary and without just cause. See Royden v. Ardoin, 160 Tex. 338, 331 S.W.2d 206, 208 (1960) ("If
an attorney, without just cause, abandons his client before the proceeding for which he was retained has been conducted to
its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to
compensation". (Emphasis supplied)). In any event, appellee failed to meet its burden to prove its withdrawal was for just
cause. Auguston, 76 F.3d at 662-63. To the contrary, as a matter of law, appellee cannot claim it withdrew for just cause
after it fired appellant, assigned him the case and effected an accord and satisfaction without reserving any responsibility or
rights therein, filed a motion to withdraw without the agreement of the clients with the belief the case had no value, and
later as an afterthought when it discovered the court of appeals reversed the case in favor of the plaintiffs tried to bootstrap
its way back into the case in order to collect the contingent fee without earning it. Appellee had no justifiable cause to
withdraw without plaintiffs' consent. Therefore, appellee has no right to recover any fees from plaintiffs, even if the
plaintiffs were parties to the intervention. Appellee had no cause of action against appellant as there was no existing
contract between them. Appellee having no interest in the plaintiffs' case by contract, and no complaint against the
plaintiffs, had no standing to intervene in the plaintiffs' case. Appellee failed to allege any cause of action against appellant
which supports the judgment of the trial court. Cunningham v. Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983) (a party
may not be granted relief in absence of pleading to support that relief); see also Tex. R. Civ. P. 301. Appellee claims its
prayer for declaratory relief supports the judgment but a declaratory judgment proceeding is merely a procedural device and
does not create any substantive rights or causes of action. Sid Richardson Co., 99 F.3d at 752.

 Therefore, the contracts between appellee and appellant, i.e., the employment contract and shareholder's agreement, are not
relevant to any issue in this case even assuming appellee's intervention was properly before the court. The trial court erred
in holding such contracts controlled the rights of appellee and appellant. Appellant's objections to the trial of the case, the
admission of evidence and submission of jury questions on the basis such contracts were relevant and controlling, were
proper objections and were erroneously overruled by the trial court, thereby preserving error. Appellant's motion for JNOV
was erroneously overruled by the trial court. Tex. R. App. R. 33.1(a)(1).

 The trial court should have dismissed appellee's intervention and ordered that plaintiffs and appellant were entitled to
finally distribute the settlement funds pursuant to their agreement without the necessity of intervention or other proceedings
filed by him or mere intermeddlers. See Royden, 331 S.W.2d at 208; Augustson, 76 F.3d at 662.

 Appellant's issue number one is granted. Our disposition of issue number one renders the other issues immaterial except
appellant's issue number five which complains he was not awarded the attorney's fees as found by the jury in answer to jury
question number six. We may ignore the immaterial jury questions as the trial court should have. Brown, 713 S.W.2d at
728. By trying the case, admitting evidence of and about the employment contract and shareholder agreement between
appellee and appellant, and submitting jury questions pursuant to appellee's theory that it could rely on such contracts,
confused the jury and caused them to make improper answers. The jury did not know the legal effect of the terminated
contracts or that they terminated when appellant was fired by appellee. We also grant appellant's issue number five.

 We conclude the trial court made an error of law which caused the rendition of an improper judgment, Tex. R. App. P.
44.1(a)(1), which we reverse and render in appellant's favor for the $676,535.89, on deposit in the registry of the court, plus
any accrued interest, to which he is immediately entitled without any further court proceedings; and appellant shall have
judgment against appellee in the amount of $70,000 as found by the jury for attorney fees, plus $5,000 if there is an appeal
to the Texas Supreme Court, and costs; and the appellee shall take nothing. Tex. R. App. P. 43.3.



 

 MAURICE AMIDEI,

 Assigned Justice



Opinion delivered and filed

this 28th day of August, 2003.

1. Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, was assigned to this Court
by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998) to
"complete the adjudication of any and all causes assigned to a panel of which [he was] a member" prior to his retirement.

2. Former Justice Maurice Amidei, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

3. [3] Tex. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997).

4. Rule 1.04(f) of Disciplinary Rules of Professional Conduct provides, in pertinent part, as follows:

 (f) A division or agreement for division of fees between lawyers who are not in the same

 firm shall not be made unless:

 (1) the division is:

 (i) in proportion to the professional services performed by each lawyer;

 (ii) made with a forwarding lawyer, or made, by written agreement with

 the client with a lawyer who assumes joint responsibility for the

 representation;

 (2) the client is advised of, and does not object to, the participation of all the

 lawyers involved; and

 (3) the aggregate fee does not violate paragraph (a).

Tex. Disciplinary R. Prof'l Conduct 1.04(f)(1)-(3) reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (Vernon
Supp. 2002) (Emphasis supplied).