COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-312-CV
  
  
K-7 
ENTERPRISES, L.P.                                                          APPELLANT
  
V.
  
JESWOOD 
OIL COMPANY, TOM D.                                          APPELLEES
JESTER, 
JR., PAUL M. HAYWOOD,
JR., 
DEMAB CORPORATION, AHMED
ELMADHOUN, 
BILL ELMADHOUN, AND
P.J.’S 
CONVENIENCE STORES, INC.
  
------------
 
FROM 
THE 158TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1] ON REHEARING
 
------------
 
        Appellant 
K-7 Enterprises, L.P.’s motion for partial rehearing is denied.  We 
withdraw our opinion and judgment of June 3, 2004 and substitute the following 
in its place.  We write on rehearing to address K-7's estoppel and 
fraudulent concealment claims.
I. Introduction
        Appellant 
K-7 Enterprises, L.P. sued Appellees, the owners and operators of PJ’s 
Convenience Stores, Inc., for damages occurring when toxic chemicals leaked from 
underground gasoline tanks at PJ’s #2 convenience store and migrated onto 
K-7's adjacent property, contaminating it.  The trial court granted a 
traditional summary judgment for Appellees on limitations grounds.  Because 
K-7's controverting summary judgment evidence raises genuine issues of material 
fact as to whether the contamination damages to K-7's property were temporary 
and not permanent, we reverse the trial court’s summary judgment as to K-7's 
claim for damages to its property sustained during the two years prior to filing 
suit, that is injuries occurring on or after January 15, 2001, and remand those 
claims to the trial court.  We affirm the trial court’s summary judgment 
on K-7's claims for damages sustained more than two years prior to filing suit, 
that is, prior to January 15, 2001.
II. Standard of 
Review
        A 
defendant is entitled to summary judgment on an affirmative defense such as 
limitations if the defendant conclusively proves all the elements of the 
affirmative defense.  KPMG Peat Marwick v. Harrison County Hous. Fin. 
Corp., 988 S.W.2d 746, 748 (Tex. 1999).  To accomplish this, the 
defendant-movant must present summary judgment evidence that establishes each 
element of the affirmative defense as a matter of law.  Ryland Group, 
Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996). Once the defendant produces 
sufficient evidence to establish the right to summary judgment based on 
limitations, the burden shifts to the plaintiff to come forward with competent 
controverting evidence raising a genuine issue of material fact with regard to a 
matter in avoidance of limitations.  See, e.g., Zale Corp. v. Rosenbaum, 
520 S.W.2d 889, 891 (Tex. 1975); Forrest v. Vital Earth Res., 120 S.W.3d 
480, 487 (Tex. App.—Texarkana 2003, pet. denied).
        In 
deciding whether a disputed material fact issue precludes summary judgment, the 
reviewing court will take as true all evidence favoring the nonmovant.  Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Nixon v. Mr. Prop. 
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  Every reasonable 
inference from the evidence will be indulged in favor of the nonmovant, and any 
doubts will be resolved in the nonmovant’s favor.  Nixon, 690 
S.W.2d at 549.  Applying this standard of review to the summary judgment 
evidence, the facts viewed in the light most favorable to K-7 are set forth 
below.
III. Factual 
Background
        In 
February 1998, a prospective purchaser of the K-7 property obtained an 
environmental site assessment of the property.  The results of the site 
assessment soil borings and groundwater samples revealed that the K-7 property 
was contaminated with toxic substances generally associated with the underground 
storage of gasoline.  The toxic substances present in the K-7 soil and 
groundwater exceeded the state-allowed levels.  A PJ’s convenience store 
located adjacent to the K-7 property, PJ’s #2, sold gasoline and stored it in 
underground storage tanks.  Consequently, K-7 made a claim against PJ’s 
Convenience Stores, Inc.’s insurer, Tank Owners Mutual Insurance Company, (“TOMIC”), 
and TOMIC agreed to clean up or remediate K-7's property and to be responsible 
for any damages.  Monitoring wells were placed on the K-7 property.  
Eventually, the monitoring wells were removed, and K-7 believed that its 
property had been cleaned and that the contamination was now below state action 
levels.  K-7 later learned that subsequent leaks had occurred at PJ’s #2 
and that the contaminants had migrated sporadically onto K-7's property 
depending on rainfall and other factors.  K-7 filed suit on January 15, 
2003.
        K-7's 
president, Dennis Koop, explained in his controverting affidavit that in May 
2002 he learned from the Texas Natural Resource Conservation Commission 
(“TNRCC”) records that TNRCC “had found that another release of gasoline 
had occurred between December 1999 and March 2000.”  A TNRCC interoffice 
memorandum also filed by K-7 as controverting summary judgment evidence 
indicates that, based on an increase in the measure of toxins from 7.1 ppm to 
326.55 ppm, “it appears that a subsequent release from the UST [underground 
storage tank] system occurred between 12/99 and 3/00.”
The 
memo explains that “the groundwater gradient [from P.J.’s convenience store] 
is to the south-southeast,” and the parties agree that the K-7 property is to 
the south of PJ’s convenience store.
        K-7 
also attached the affidavit of Daniel Airey as controverting summary judgment 
evidence. Airey’s affidavit indicates that he has been “personally involved 
in the investigation of the source and impact of the hydrocarbon contamination 
of K-7 property.”  According to Airey,
  
Contaminant migration direction has been documented on multiple occasions to be 
from the PJ’s #2 facility towards the K-7 property. The release and migration 
of contaminants from the PJ’s #2 property onto the K-7 property is sporadic 
and intermittent based on multiple factors such as rainfall and the 
heterogeneity of the subsurface lithology, and has occurred periodically during 
the period of 1998 to the present as well as many other periods of time. . . . 
The injury to the K-7 property is periodic, sporadic, and intermittent, and is 
not constant and continuous.

Another 
of K-7's experts, Sullivan Curran, executed an affidavit that K-7 relied upon as 
controverting summary judgment evidence explaining discrepancies in Appellees’ 
monthly inventory control sheets for gasoline stored on the PJ’s #2 
property.  Curran summarized that the records “show significant 
discrepancies for the years 2001 and 2002 in Unleaded, Plus and Super gasoline 
quantities” delivered to PJ’s #2 and those quantities accounted for by 
PJ’s #2 “resulted in significant unaccounted losses of gasoline stored and 
dispensed.”  Curran explained that in addition to the intermittent or 
sporadic gasoline losses, corrected data from the inventory control sheets show 
the likelihood of a separate and significant loss in Super gasoline during May 
and June of 2002.
IV. Genuine 
Issues of Material Fact Exist as to Whether Damages to K-7's Property were 
Temporary and not Permanent
        K-7's 
original suit sought damages because “[d]ue to the negligent, careless, and/or 
reckless behavior of one or more of these Defendants, these underground storage 
tank systems have leaked on more than one occasion,” and alleged that the 
petroleum products migrated underground and contaminated K-7's property.  
Appellees moved for summary judgment on the affirmative defense of limitations, 
alleging that “Plaintiff admits having had actual knowledge of the 
contamination in February 1998, almost five years before Plaintiff filed this 
lawsuit.”
        A 
suit for damage to land must be brought not later than two years after the cause 
of action accrues.  Tex. Civ. Prac. 
& Rem. Code Ann. § 16.003(a) (Vernon 2002).  The determination 
of the accrual date depends upon whether the damage to the land is characterized 
as permanent or temporary.  Schneider Nat’l Carriers, Inc. v. Bates, 
147 S.W.3d 264, 270 (Tex. 2004); Nugent v. Pilgrim's Pride Corp., 30 
S.W.3d 562, 567 (Tex. App.—Texarkana 2000, pet. denied).  An action for 
permanent damages to land accrues, for limitations purposes, upon discovery of 
the first actionable injury. Bayouth v. Lion Oil Co., 671 S.W.2d 867, 868 
(Tex. 1984), disapproved of on other grounds, Schneider Nat’l Carriers, 
Inc., 147 S.W.3d at 281 n.78; Tennessee Gas Transmission Co. v. Fromme, 
153 Tex. 352, 269 S.W.2d 336, 354 (1954).  But damages for temporary 
injuries may be recovered for injuries sustained within the two years prior to 
filing suit.  Bayouth, 671 S.W.2d at 868.  The character of an 
injury as either permanent or temporary is determined by the consequences 
flowing from it.
 
Thus, if a nuisance occurs several times in the years leading up to a trial and 
is likely to continue, jurors will generally have enough evidence of frequency 
and duration to reasonably evaluate its impact on neighboring property 
values.  In such cases, the nuisance should be treated as permanent, even 
if the exact dates, frequency or extent of future damage remain unknown.  
Conversely, a nuisance as to which any future impact remains speculative at the 
time of trial must be deemed “temporary.”
 
Schneider 
Nat’l Carriers, Inc., 147 S.W.3d at 280.
 
        While 
these general rules governing whether an injury is temporary or permanent seem 
straightforward, applying them to the facts involved in any particular case has 
proved difficult.  Nugent, 30 S.W.3d at 569 (setting forth an 
excellent discussion of cases addressing whether various types of injuries to 
land are permanent or temporary).  In determining whether an injury to land 
is permanent or temporary, it is helpful to focus first on the activity causing 
the injury and then on the injury itself. Walton v. Phillips Petroleum Co., 
65 S.W.3d 262, 273 (Tex. App.—El Paso 2001, pet. denied).
        Here, 
the activity involved the underground storage of gasoline.  Appellees’ 
activity, simply storing gasoline in tanks underground, did not cause any damage 
to K-7's property.  The summary judgment evidence shows that the injury 
causing damage to K-7's property was multiple gasoline leaks from the 
underground storage tanks on the PJ’s #2 property, occurring on distinct 
occasions including one in May or June of 2002, and the sporadic and 
intermittent migration of the contaminants onto K-7's property depending on 
rainfall and the “heterogeneity of the subsurface lithology.”  No 
summary judgment evidence exists in the record that the gasoline storage tanks 
at PJ’s #2 leaked continuously. In fact, Appellees’ summary judgment 
evidence includes tank tightness tests performed on the tanks at PJ’s #2 
indicating that at the times the tanks were tested they were not leaking.  
Viewed in the light most favorable to K-7, these facts raise a genuine issue of 
material fact as to the temporary nature of the damages to the K-7 
property.  See, e.g., Schneider Nat’l Carriers, Inc., 147 S.W.3d 
at 280-81 (explaining that a nuisance that occurs monthly but is about to be 
cleaned up so that surrounding property values are restored may be temporary); Bayouth, 
671 S.W.2d at 868 (holding a genuine issue of material fact exists as to whether 
damage from salt water migration onto adjacent land was a temporary injury); Atlas 
Chem. Indus., Inc., v. Anderson, 524 S.W.2d 681, 684-85 (Tex. 1975) (holding 
damage from deposits left on land when wastewater from chemical plant discharged 
into creek that flowed onto land a temporary injury); Austin & N.W. Ry. 
Co. v. Anderson, 79 Tex. 427, 15 S.W. 484, 485 (1891) (holding flooding of 
land occurring only during heavy rains because of a railroad’s construction of 
roadbeds and culverts that changed the natural flow of surface water a temporary 
injury); Nugent, 30 S.W.3d at 566, 571 (holding damage from arsenic 
contamination of land occurring when rain washed chicken litter and hatchery 
waste downstream a temporary injury).  In other words, in light of K-7's 
controverting summary judgment evidence that the underground storage tanks at 
PJ’s #2 suffered multiple, distinct gasoline discharges and that the 
discharged gasoline migrated sporadically and intermittently onto K-7's 
property, Appellees did not conclusively establish that the injuries to K-7's 
property were permanent.  Cf. Fromme, 269 S.W.2d at 337 (holding 
damage from water flowing continuously from compression station across 
plaintiff’s property was a permanent injury); Walton, 65 S.W.3d at 272 
(holding damage from water seeping through salt pit filled in the late 1960's 
was permanent and suit brought in 1996 was time barred).  Summary judgment 
evidence exists that current experiences are unrepresentative.  See 
Schneider Nat’l Carriers, Inc., 147 S.W.3d at 280.
        We 
next address Appellees’ arguments concerning K-7's summary judgment 
evidence.  Appellees lodged objections to portions of K-7's summary 
judgment evidence, including Airey’s and Curran’s affidavits. K-7 
subsequently tendered supplemental affidavits from Airey and Curran.  
Appellees lodged objections to the supplemental affidavits, but the trial court 
did not rule on them and signed an order granting K-7 leave to file the 
supplemental affidavits.
        Appellees 
claim on appeal that the trial court “implicitly” sustained their objections 
to K-7's summary judgment evidence and urge this court to not consider the 
objected-to evidence.  A party must obtain a ruling on an objection as to 
defects in the form of an affidavit or attachment, or it is not preserved for 
our review.  See Tex. R. Civ. 
P. 166a(f) ("Defects in the form of affidavits or attachments will 
not be grounds for reversal unless specifically pointed out by objection by an 
opposing party with opportunity, but refusal, to amend."); Wren v. 
G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, 
no pet.) (op. on reh’g).  Because the trial court did not rule on 
Appellees’ objections, their form objections are not preserved for our 
review.  See Wren, 73 S.W.3d at 498.  Appellees lodged 
substantive objections to Airey’s and Curran’s supplemental affidavits, but 
when the trial court granted K-7 leave to file those affidavits it implicitly 
overruled Appellees’ objections.  See Tex. R. App. P. 33.1(a); see also 
Rapp v. Mandel & Wright, P.C., 127 S.W.3d 888, 895 (Tex. 
App.—Corpus Christi 2004, pet. denied) (op. on reh’g) (recognizing trial 
court implicitly overruled appellant’s motion to strike intervention by 
proceeding to trial and granting relief for intervener); Chappell v. State, 
850 S.W.2d 508, 510 (Tex. Crim. App. 1993) (recognizing trial court implicitly 
overruled defendant's objection to jury shuffle by granting State's motion to 
shuffle).  When the trial court took action inconsistent with the 
sustaining of Appellees’ objections to Airey’s and Curran’s affidavits, 
i.e., signing an order granting leave to file the supplemental affidavits, it 
implicitly overruled Appellees’ objections, rather than implicitly 
sustaining them as Appellees argue.  Consequently, we consider Airey’s 
and Curran’s supplemental affidavits as properly part of the summary judgment 
record before us.  We sustain K-7's first and second issues.
        In 
its third issue, K-7 claims that the trial court erred by granting summary 
judgment because the continuing tort doctrine applies.  The continuing tort 
doctrine involves continuing wrongful conduct and continuing injury.  Dickson 
Constr., Inc. v. Fid. and Deposit Co. of Maryland, 960 S.W.2d 845, 851 (Tex. 
App.—Texarkana 1997, no writ).  Because, as outlined above, the summary 
judgment evidence establishes that the PJ’s #2 storage tanks suffered 
multiple, distinct gasoline discharges and that the discharged gasoline migrated 
sporadically and intermittently onto K-7's property, the summary judgment record 
fails to establish the opposite, continuing wrongful conduct and continuing 
injury.  See Cook v. Exxon Corp., 145 S.W.3d 776, 785 (Tex. 
App.—Texarkana 2004, no pet.); see also Walton, 65 S.W.3d at 275 
(holding doctrine of continuing tort does not apply to injury to property); Loyd 
v. ECO Res., Inc., 956 S.W.2d 110, 127 (Tex. App.—Houston [14th Dist.] 
1997, no pet.) (same).  We overrule K-7's third issue.
V. No Genuine 
Issues of Material Fact Exist as to Equitable
Estoppel or 
Fraudulent Concealment
 
        We 
also address whether K-7 raised a genuine issue of material fact regarding 
whether the doctrines of equitable estoppel or fraudulent concealment preclude 
Appellees from asserting limitations as a defense to its claims for damages to 
its property sustained prior to January 15, 2001.  K-7 contends that it 
raised a genuine issue of fact as to whether Appellees are estopped from 
asserting the defense of limitations because Appellees’ actions and 
representations wrongfully induced K-7 to delay filing suit until after the 
limitations period expired.
        The 
doctrine of equitable estoppel is based on the principle that if one party by 
his conduct induces another to act in a particular manner, he should not be 
allowed to adopt an inconsistent position and thereby cause loss or injury to 
the other.  Super Wash, Inc. v. City of White Settlement, 131 S.W.3d 
249, 260 (Tex. App.—Fort Worth 2004, pet. filed); Maguire Oil Co. v. City 
of Houston, 69 S.W.3d 350, 367 (Tex. App.—Texarkana 2002, pet. 
denied).  Thus, equitable estoppel may bar a limitations defense when a 
party, his agent, or his representative makes representations that induce a 
plaintiff to delay filing suit until the limitations period has run.  Vaughn 
v. Sturm-Hughes, 937 S.W.2d 106, 108 (Tex. App.—Fort Worth 1996, writ 
denied).
        To 
invoke equitable estoppel in response to a motion for summary judgment on 
limitations grounds, the nonmovant must raise a fact issue that show the 
following: (1) a false representation or concealment of a material fact; (2) the 
representation was made with knowledge or the means of knowledge of the true 
facts; (3) the representation was made to a party without knowledge or the means 
of knowledge of the true facts; (4) the representation was made with the 
intention that it would be acted on; and (5) the party to whom the 
representation was made relied on or acted on it to his or her prejudice. Id. 
at 108-09.  When equitable estoppel is alleged in avoidance of a 
limitations defense, the failure to file suit must be “unmixed” with any 
want of diligence on the plaintiff’s part.  Id. at 109.
        Fraudulent 
concealment is based on the doctrine of equitable estoppel, and where 
applicable, it likewise estops a defendant from asserting limitations as an 
affirmative defense.  Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 
430, 439 (Tex. App.—Fort Worth 1997, pet. denied).  The doctrine of 
fraudulent concealment tolls or suspends the running of limitations because the 
defendant has concealed from the plaintiff facts necessary for the plaintiff to 
know that he has a cause of action against the defendant.  DiGrazia v. 
Old, 900 S.W.2d 499, 504 (Tex. App.—Texarkana 1995, no writ).  The 
estoppel effect ends, and the statute of limitations begins to run, when a 
plaintiff has knowledge of facts, conditions, or circumstances that would cause 
a reasonable person to make an inquiry, which, if pursued, would lead to 
discovery of the concealed cause of action, because such knowledge is the 
equivalent for limitations purposes of knowledge of the cause of action 
itself.  Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co., 
866 S.W.2d 740, 747 (Tex. App.—Houston [14th Dist.] 1993, writ denied); Stephens 
v. James, 673 S.W.2d 299, 303 (Tex. App.—Dallas 1984, writ ref’d n.r.e.). 
In order to invoke the estoppel effect of fraudulent concealment, a plaintiff 
must show (1) the existence of the underlying tort; (2) the defendant’s 
knowledge of the tort; (3) the defendant’s use of deception to conceal the 
tort; and (4) the plaintiff’s reasonable reliance on the deception.  Mitchell 
Energy Corp., 958 S.W.2d at 439.
        In 
the instant case, the summary judgment evidence reflects that when K-7 became 
aware of the first release of contaminants in early 1998, it immediately 
contacted PJ’s Convenience Stores, Inc.’s insurer, TOMIC, to discuss the 
contamination.  In his controverting affidavit, Koop explained that, during 
both 1998 and 1999, he had “numerous and repeated telephone conversations” 
with TOMIC regarding the contamination.  According to Koop, TOMIC 
represented that Jim Adams of Complete Earth Services (“CES”) had been hired 
to assess and to remediate K-7's property. TOMIC also agreed to indemnify K-7's 
prospective purchaser for any damages associated with the release of 
contaminants from PJ’s #2.  In a letter dated January 12, 1999, TOMIC 
advised Koop that it would be responsible for “Damages on account of Personal 
Injury or Property Damage for claims arising out of the Pollutant 
emanating from PJ’s #2.”
        Thereafter, 
CES installed two wells on K-7's property to monitor the levels of 
contamination, and K-7 believed that Appellees were in the process of 
remediating the property.  Koop indicated that in February 2001, CES 
contacted him and requested permission to enter K-7's property to remove the 
monitoring wells because “the contamination levels were decreasing and the 
wells were no longer needed.”  According to Koop, he agreed to allow CES 
access to the property to remove the wells because he believed that the 
contamination on K-7's property was below state action levels at that 
time.  He further explained that he did not file suit against Appellees 
during that time due to the affirmative representations by TOMIC and CES that 
the property was being remediated and that the levels of contamination had 
decreased.  Until May 2002, K-7 was wholly unaware that its property had 
not been remediated or that a subsequent release of contaminants had occurred 
between December 1999 and March 2000.  At that time, K-7 discovered that in 
February 2001, two weeks prior to removing the wells, CES had taken samples from 
the wells and the levels of contamination had actually increased rather than 
decreased.  In addition, according to Koop, although CES was instructed by 
TNRCC to install two other monitoring wells on K-7's property in February 2001, 
CES never informed K-7 of this information until approximately a year-and-a-half 
later during the summer of 2002.
        Viewing 
the summary judgment evidence in the light most favorable to K-7, we conclude 
that K-7 possessed knowledge of facts that would make a reasonable person verify 
the contamination levels on its property after the alleged remediation and that 
would make a reasonable person verify that the leakage from the PJ’s #2 
storage tanks had been solved.  Although K-7 originally had knowledge of 
the contamination in February 1998 and delayed in filing suit based on 
affirmative actions and representations by Appellees and its agents indicating 
that K-7's “property was being remediated” and that “the levels of 
contamination had decreased,” K-7 nonetheless undisputedly possessed knowledge 
of facts that, if investigated, would have revealed K-7's cause of action 
against Appellees.  That is, K-7 knew its property had been contaminated, 
and therefore knew of its cause of action.  K-7 knew that TOMIC had hired 
CES to remediate the property, knew that CES was in communication with the 
TNRCC, and knew CES was removing the monitoring wells from the property.  
K-7 did not attempt to verify the contaminant levels at the time CES removed the 
monitoring wells, but admits that the TNRCC conducted testing two weeks before 
the wells were removed and that results of this testing indicated the 
contamination levels had risen.  In short, K-7's reliance on CES’s 
representations were not reasonable under the circumstances.  Accord 
Walton, 65 S.W.3d at 275 (holding reliance on deception unreasonable after 
plaintiff knew of contamination). Moreover, we question whether CES, a nonparty, 
had a duty to disclose any information to K-7; K-7's summary judgment evidence 
concerning fraudulent concealment and estoppel focuses on CES’s alleged 
deception, not Appellees.  See Bayou Bend Towers, 866 S.W.2d at 746 
(holding plaintiff failed to meet fraudulent concealment burden because no 
evidence existed establishing a duty to disclose).  Thus, we hold that the 
doctrines of equitable estoppel and fraudulent concealment do not preclude 
Appellees’ limitations defense concerning damages occurring prior to January 
15, 2001.  We overrule K-7's fourth issue.
VI. Conclusion
        Having 
sustained K-7's first and second issues and having overruled K-7's third and 
fourth issues, we reverse the trial court’s summary judgment for Appellees 
foreclosing K-7's right of recovery for the successive injuries to its property 
occurring on or after January 15, 2001 and remand those claims to the trial 
court.  We affirm the trial court’s summary judgment for Appellees as to 
any injuries to the K-7 property occurring before January 15, 2001.
    
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
DELIVERED: 
January 27, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.